## Turner's Estate.

*Wills—Bequest of dividends—Stock dividends.*

1. A bequest by a testator of "all the dividends which shall be declared after my death......upon all shares of the capital stock of" certain corporations, is a bequest not only of cash dividends declared upon said stock, but also of stock dividends declared and distributed out of earnings accruing after the death of testator.

*Personal property—Gifts inter vivos—Evidence—O. C., jurisdiction—Issue to C. P.*

2. After the death of an alleged donor, the evidence of a gift inter vivos must be clear and satisfactory, must disclose an unmistakable intention on the part of the donor at the time to withdraw or surrender his dominion over the subject of the gift, must show unequivocally an intention to invest the donee with a right of disposition beyond the recall of the donor, the gift must be completed by actual or constructive delivery beyond the power of revocation, the intention of the donor must be made manifest and established by clear and concise evidence and the delivery of the sub-

ject of the gift must be as complete as the circumstances permit. The burden of proof is upon one who claims the benefit of a gift inter vivos.

3. Testator by will gave to his wife all the dividends which should be declared upon certain stock after his death; shortly after his death a stock dividend was declared by one of the companies mentioned by him, and the widow agreed that the interest or dividend on the certificate for such additional stock should be equally divided between herself and two sons of the decedent by a former wife, and that after her death the principal should go to those two sons. Later on another stock dividend was declared and the widow transferred the same to the heirs of her husband, reserving the interest or dividends thereon to herself during life. Still later another company declared a stock dividend, and the widow delivered the certificate for the new stock, which was issued in the name of the estate of the deceased husband, to her coadministratrix, with directions to put it in a box at a bank where the other securities of the estate were kept. About a year later the widow died, and a contest arose between the surviving administratrix of the estate of the husband and the personal representatives of the wife as to the ownership of the stock last referred to. A legatee under the will of the wife filed a petition praying that the stock in question be transferred to the estate of the wife. *Held,* that the court, after hearing, did not err in deciding that the stock belonged to the estate of the wife, and that it be so transferred.

4. When one claiming property voluntarily brings himself and his cause within the jurisdiction of the Orphans' Court, he is not thereby creating a jurisdiction which never existed before but is adopting one already established, and the Orphans' Court has jurisdiction finally to decide the question of ownership of property already actually in a decedent's estate, and incidentally, where the facts call for it, to decree a final surrender of such assets to outside claimants, especially where the parties to the controversy have treated the asset as belonging to the estate by including it in accounts or otherwise. In such case, it is not necessary for the Orphans' Court to grant an issue to the Common Pleas Court to determine the title in the property.

Argued Feb. 18, 1914. Appeal, No. 372, Jan. T., 1913, by Harriet T. Turner, from decree of O. C. Schuylkill Co., March T., 1912, No. 23, dismissing exceptions to decree of distribution in Estate of Jesse Turner, Deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to decree of distribution. Before WIL-
HELM, P. J.

The opinion of the Supreme Court states the case.

The court dismissed the exceptions to the decree of
distribution. Harriet T. Turner appealed.

*Errors assigned* were in overruling exceptions.

*E. A. Beddall,* with him *N. S. Farquhar,* and *C. E.
Berger,* for appellant.

*W. K. Woodbury,* of *Woodbury & Woodbury,* for ap-
pellees.

OPINION BY MR. JUSTICE MOSCHZISKER, March 30,
1914:

Jesse Turner provided in his will "I further give and
bequeath unto my said wife all the dividends which shall
be declared after my death, during her natural life, upon
all my shares of the capital stock of The Washington
Gas Light Co., of the Miners' National Bank......of
the Pottsville Water Co." His wife, Matilda Turner,
survived the testator, and during her life a stock divi-
dend of $3,600 was declared by the gas light company;
whereupon she expressly agreed that the "interest or
dividend on the certificate for $3,600" should be equally
divided between herself and two sons of Jesse Turner by
a former wife, and that after her death the principal
should go to these two sons. Later on another stock
dividend amounting to $13,200 was declared, and the
widow signed a transfer turning this over to "Jesse
Turner's heirs," reserving the interest or dividends
thereon to herself for life. In October, 1910, the water
company declared a stock dividend of 100 per cent.
The Jesse Turner estate held 271 shares of this stock,
which stood in the name of the decedent, and accord-
ingly the new certificate was issued to "The Estate of

Jesse Turner, deceased," and delivered to his widow, who at that time was an administratrix d. b. n. c. t. a. of the estate, with Harriet T. Turner, a granddaughter of the decedent. Mrs. Turner handed the certificate to her co-administratrix with directions to put it in a box at the Miners' Bank, where the other securities of the estate were kept. Matilda Turner died about a year after this, and the surviving administratrix of the estate of Jesse Turner subsequently filed an account, in which she included all the stock of the water company as an asset of her decedent's estate. Before the account came on for adjudication a legatee under the will of Matilda Turner, deceased, filed a petition in the court below in which she called attention to the fact that the personal representatives of her decedent had excepted to the account of Harriet T. Turner, surviving administratrix of the estate of Jesse Turner, deceased, upon the ground that the "stock dividend issued by the Pottsville Water Co. was income and belonged to the estate of Matilda Turner, and not to the estate of Jesse Turner, as set forth in the above account," and that testimony had been taken on these exceptions; she prayed for a decree that 271 shares of stock of the water company be assigned to the estate of Matilda Turner, deceased. In her answer, the surviving administratrix of the estate of Jesse Turner claimed the stock in question as an asset of his estate, and prayed that the petition be dismissed. The court determined that the stock belonged to the estate of Matilda Turner and not to that of Jesse Turner; but before a decree was entered, the representative of the latter applied for and was given an opportunity to present further evidence. After considering the additional proofs, the court ordered that a decree be prepared in accordance with its original opinion, and thereupon the administratrix of the estate of Jesse Turner, deceased, challenged its jurisdiction to settle the question of title and asked for an issue to try the facts; this was denied and a final decree entered. Harriet T. Turner, representing those inter-

ested in the estate of Jesse Turner, deceased, has ap-
pealed. There are a number of assignments of error, but
they present only a few questions for our consideration.

Under the proofs there can be no doubt but that the
stock dividend represented income earned after the de-
cease of Jesse Turner, and that by the terms of his will
it belonged to his widow, Matilda Turner. The appel-
lant contends, however, that the evidence showed a gift
.of this stock by Matilda Turner to the estate of Jesse
Turner or a surrender of her interest therein "in trust
for the remaindermen under the will of Jesse Turner,"
and that the court below erred in deciding to the con-
trary; next, that the proofs were at least sufficient to
show a substantial dispute as to the ownership of .the
stock, and therefore, the court below lacked jurisdiction,
and an issue should have been granted.

So far as the first of these contentions is concerned,
we have said that after the death of an alleged donor the
evidence of a gift inter vivos must be clear and satis-
factory, that it must disclose an unmistakable intention
on the part of the donor at the time to withdraw or sur-
render his dominion over the subject of the gift, that it
must show unequivocally an intention to invest the
donee with the right of disposition beyond the recall of
the donor, that the gift must be completed by actual or
constructive delivery beyond the power of revocation,
that the intention of the donor must be made manifest
and established by clear and precise evidence, and the
delivery of the subject of the gift must be as complete as
the circumstances permit; finally, in Sullivan v. Hess,
241 Pa. 407, we state, "To constitute a valid gift inter
vivos two essential elements must combine, an intention
to make the gift then and there, and such an actual or
constructive delivery at the same time to the donee as
divests the donor of all dominion over the subject and
invests the donee therewith. The burden of proof is
upon the one who claims the benefit of a gift inter vivos,
and the proof must be clear and satisfactory," (also see,

Hawn v. Stoler, 208 Pa. 610; Smith's Est., 237 Pa. 115),
and in Smith's Est., 144 Pa. 428, we say that an imper-
fect gift cannot be given effect by construing it as a
declaration of trust, that although a (p. 437) "donor
need not say in so many words, 'I declare myself a trus-
tee,' he must do something which is equivalent to it and
use expressions which have that meaning"; all of which
gives a fair idea of the standard of proof required.

It would serve no useful purpose to detail the evidence
in this case, for there was practically no dispute con-
cerning the underlying facts; none of them presented
direct proof of a gift, and the only question was whether
the circumstances relied upon to show that fact, when
viewed in the light of our decisions upon the same gen-
eral subject and weighed according to the legal stand-
ards thereby established, were sufficient to justify infer-
ences that called for the conclusion that Matilda Turner
had actually parted with or surrendered her property
in this stock in favor of the remaindermen under the
will of her husband. We have examined the evidence
and are not convinced that the court below erred in hold-
ing it insufficient to make out a trust or gift inter vivos,
or to show a substantial dispute upon the point. Under
the facts at bar there was no particular significance in
the circumstance that the stock dividend was issued
directly to the estate of Jesse Turner, since the original
shares stood in his name. It appears that Matilda
Turner never surrendered complete dominion of the
stock in question or put it entirely beyond her control,
as she did in the case of the other two dividends. Here,
while the circumstances depended upon to establish the
gift were such as might have been expected had she in
fact presented the stock to those interested in the estate
of her husband, yet, they were not inconsistent with the
hypothesis that she had no intention of making such a
gift; hence the evidence was insufficient to maintain the
appellant's claim.

As to the question of jurisdiction,—in Paxson's Est.,

225 Pa. 204, 206, we said that when one claiming property "voluntarily brings himself and his cause within the jurisdiction" of the Orphans' Court "he is not thereby creating a jurisdiction which never existed before but adopting one already established," and in Williams' Est., 236 Pa. 259, at p. 271, we refer to cases "wherein it is ruled that the Orphans' Court has jurisdiction finally to decide the question of ownership of property already actually in a decedent's estate, and, incidentally, where the facts call for it, to decree a final surrender of such assets to outside claimants," particularly, "when the claimant voluntarily included the asset in an account stated by him or brought and submitted the issue of its ownership to that tribunal for its determination." In the present case the appellant included the stock as an asset in her account and then both sides to the controversy submitted the question of ownership to the Orphans' Court; under such circumstances, since we are not convinced that the court below erred in its view of the evidence, we cannot say there was error in the refusal to grant an issue.

The assignments are overruled and the decree is affirmed at the cost of the appellant.