## Campbell's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

The facts appear from the following opinion of

LADNER, J., hearing judge.—This was an appeal taken by Helen O'Donnell, daughter of Mary A. Campbell, decedent, who died testate on July 10, 1946, from the decision of the register assessing a transfer inheritance tax of $100 on $5,000 in cash, claimed by appellant as having been the subject of a gift inter vivos from decedent.

The register imposed the tax pursuant to section 1(c) of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, which provides:

"Be it enacted, etc., that a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations in the following cases: (c) When the transfer is of

property made by a resident . . . by gift . . . intended to take effect in possession or enjoyment at or after such death."

It is well settled law that, "after the death of an alleged donor the evidence of a gift inter vivos must be clear and satisfactory, that it must disclose an unmistakable intention on the part of the donor at the time to withdraw or surrender his dominion over the subject of the gift, that it must show unequivocally an intention to invest the donee with the right of disposition beyond the recall of the donor, that the gift must be completed by actual or constructive delivery beyond the power of revocation, that the intention of the donor must be made manifest and established by clear and precise evidence, and the delivery of the subject of the gift must be as complete as the circumstances permit": Turner's Estate, 244 Pa. 568, 572, cited in Leadenham's Estate, 289 Pa. 216.

With this guiding principle in mind, I review the facts as gleaned from the evidence produced before me.

Decedent died July 10, 1946. Appellant here, Helen O'Donnell, a daughter, testified that in April or May of 1944 decedent took her to the Philadelphia Saving Fund Society in which they had a joint safe deposit box and showed appellant $5,000 in bank notes in a white envelope, unmarked, with a rubber band around it. Opening it, she (decedent) said, "This is $5,000 in this envelope, it is for you. I want you to have it— I want you to have this money." The witness continued, "Of course, naturally, I was surprised and she said, 'Now, I feel that the other children are all able to take care of themselves. You are a widow and have a small son, I want you to have this money, *so she put it back in the envelope and left it in her box.*'"

After her mother's death appellant testified that accompanied by her lawyer she went to the safe deposit box and they found the $5,000 still in the same

envelope. On cross-examination, appellant admitted that she was the executrix of her mother's estate and that it consisted of personalty and real estate, and proceeds of insurance totaling altogether between $125,-000 and $130,000, and that appellant's share of this estate would be between $25,000 and $30,000.

It appeared further that as executrix Mrs. O'Donnell had executed the inheritance tax affidavit, which affidavit was shown to her by counsel for the Commonwealth and her attention directed to Schedule "C" thereof which refers to transfers, and that schedule read: "In October, 1945, decedent informed her daughter, Helen O'Donnell, that she had given her $5,000 and placed in their joint box at the Philadelphia Saving Fund Society to which Helen O'Donnell had at all times access. The motivation of this gift was the fact that Helen O'Donnell was a widow, depending upon a small pension for support. The donee was told to 'be sure to take the money if anything should happen to the donor'." The witness was an intelligent woman and she testified that she knew what she was signing. The hearing judge was particularly careful to interrogate her on this point:

"Q. You told me you read the document over before you signed it?

"A. Yes.

"Q. I am asking you now, did you understand what you were signing?

"A. I understood because mother always told me—she asked me several times why I did not take that money out of the box for different bills. I know because I went up there and I had seen mother and mother always said that 'if anything would happen to me, that money is yours. It is not to be divided among the other three children'. Everyone of our family thinks the same thing."

On behalf of appellant there was further testimony of her sister, Margaret C. Murphy, 6030 North Elev-

enth Street, Philadelphia, who testified that in 1944 her mother had told her that she had given to witness' sister, Helen, $5,000, that Helen was very good to her and when she brought Mr. Campbell home Helen took care of them. That was September 1, 1943. Mr. Campbell died in April 1944. On a subsequent occasion when the witness called decedent's attention to a defective heating system in Helen's home, decedent replied, "That is her own fault, she has $5,000, if she does not want to use it, that's her fault." However, this witness testified also that decedent impressed on the witness *"that if anything happened to her*, that the money did not belong to us. It was for my sister because she was a widow."

The question for the hearing judge is whether the testimony, above summarized and quoted as to salient parts, proves with sufficient clarity and preciseness that the transfer of the $5,000 in question constituted a complete, executed and irrevocable transfer by gift inter vivos or as the Commonwealth contends, a transfer to take effect at or after death, and thus taxable. The auditing judge is compelled to rule that appellant has not met the burden of proving with sufficient clarity and preciseness a nontaxable gift. It lacks the important essential of delivery to make the gift a complete gift inter vivos. It nowhere appears that the $5,000 was actually delivered. It was shown to appellant, then put back in the envelope by the alleged donor, and then back into the box where it was originally. The language employed by decedent and the circumstances of the incident all indicate futurity. Decedent did not say "I give you the money" and follow the expression with delivery. She said, "I want you to have it". While claimant testified that the money was her's to use as she wished yet her sworn affidavit and her explanation thereof was that she was to have it if anything happened to the donor. This understanding finds

support in the fact that for almost two years from the date of the alleged gift not a penny was used by appellant though she had full access to the box. This indicates that testatrix did not and never intended to surrender complete dominion over the money until her death. The hearing judge therefore finds that the gift here, if such there was, was intended to take effect only after the death of the donor, hence is taxable.

*Joseph P. Gaffney*, for exceptant.

*T. McKeen Chidsey*, Attorney General, by *P. Gilman Spencer*, Special Deputy Attorney General, contra.

HUNTER, J., November 28, 1947.—The hearing judge in a well-considered opinion has carefully reviewed the testimony and the applicable principles of law, and we agree with his findings and conclusions.

No delivery accompanied the declaration of gift, and the money remained, as it had before, within the control of the donor, and no dominion was exercised by the donee thereafter.

The strongest testimony presented by the donee was the subsequent suggestions by the donor that the donee make immediate use of the money for her necessities. These suggestions, however, were not acted upon by the donee, and the donee's case was weakened by other declarations of the donor that "if anything happened to her" the money was the donee's, which would indicate not a present but a future gift intended to take effect at or after death.

Appellant has not shown "a clear, satisfactory and unmistakable intention of the giver to part with and surrender dominion over the subject of the gift, with an intention to invest the donee with the right of disposition beyond recall, accompanied by an irrevocable delivery": Turner's Estate, 244 Pa. 568; Kaufmann's Estate, 281 Pa. 519.

The exceptions are dismissed and the decree of the hearing judge is confirmed absolutely.