## Roberts's Appeal. Reed *et ux. versus* Roberts *et al.*, Administrators of Thomson.

1. T. transferred stock to F., a niece of his wife, on the books of a corporation, but retained the certificates in his possession, and after his death they were found in an envelope, with his own name and that of F. endorsed thereon. F. had no knowledge of the transfer. She lived in the family of T. and was in all respects treated and regarded as his daughter. *Held* (affirming the court below), that the transfer on the books of the corporation vested in F. the legal title to the stock and she was entitled to the same.

2. *Held, further,* that the circumstances of the case rebutted the presumption of a resulting trust.

June 22d 1877.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the decree of the Court of Common Pleas, No. 4, of *Philadelphia county :* Of January Term 1877, No. 225.   Certified from the Eastern District.

This was a bill in equity, filed by Henry Reed and Charlotte F., his wife, late Charlotte F. Foster, against George B. Roberts and others, administrators c. t. a., and trustees of the estate of J. Edgar Thomson, deceased.

The late J. Edgar Thomson having in his lifetime become the purchaser of two thousand shares of the stock of the " Pennsylvania Company," of the value of $100,000, caused the said shares to be transferred on the books of the company to Miss Charlotte F. Foster, the plaintiff in this case.   The certificates were made out in her name, and retained in the possession of Mr. Thomson, where they were found after his death, enclosed in an envelope, which was superscribed in his own handwriting, "J. Edgar Thomson," and in one corner of the envelope, also in his handwriting, the words, "Miss C. F. Foster."   The certificates bear date April 1st 1874.   Mr. Thomson died May 27th 1874, leaving no child or lineal descendants.   His personal estate was inventoried at $1,222,406.04, besides which he left real estate valued at $300,000. Miss Foster was an orphan niece of Mr. Thomson's wife.   At his request she came to reside in his family when she was under fourteen years of age, and continued to reside with him until the time of his death, being treated by him (as is alleged in the bill and not denied in the answer) as his own child, and with the greatest tenderness and affection.   On the 20th of December 1871, Mr. Thomson made his will, by which he gave and bequeathed his real and personal estate to trustees for charitable uses, first, however, reserving out of the proceeds so much as his " beloved wife may deem necessary for the maintenance of herself and his dear niece, Charlotte F. Foster," and certain other sums for the payment of legacies bequeathed by his will.   On the 24th of May 1874, he made a codicil to his will, in which he declared: "I desire my dear niece, Lottie Foster, but to whom I cherish the feelings of a father, to be so treated and regarded in the law as if she were really my

child, receiving, during her lifetime, such income from my estate as if she were really my child, and I postpone the operation of the trusts of my will, so as fully to effect this result, until her decease, upon which event they are further to take full effect, as expressed in the will." On the 26th of May 1874, he added another codicil, in which he declared as follows: " The codicil which I added to my will the other night (May 24th) means that I wish my niece, Charlotte F. Foster, to be considered as my daughter, and to take out of the income of my estate all that she requires to render her more than comfortable in her housekeeping during her lifetime. I do not desire to postpone by it the operation of the trusts of my will except so far as may be necessary to secure the above object."

No dividends were paid upon the stock in the interval elapsing between the date of the transfer of the stock to the plaintiff and the date of Mr. Thomson's decease. In the year 1874, the two thousand shares of the Pennsylvania Company, transferred by Mr. Thomson to the plaintiff, were, by the assent of all parties, exchanged for an equivalent amount, at par, in the 7 per cent. mortgage-bonds of the Pittsburgh, Cincinnati & St. Louis Railway Company, the plaintiff executing, on the 7th of October 1874, a power of attorney for the transfer of the stock, in order to facilitate the exchange.

The bill averred that said shares of stock were a present, immediate, executed gift from Mr. Thomson to his niece, as an expression of his parental feelings towards her, and that the bonds into which said stock was converted were her individual property and did not belong to the estate of decedent.

It prayed therefore that the defendants be required to deliver said bonds to her, and to account for the dividends received on said stock and bonds.

The answer of defendants admitted, in effect, the facts alleged in the bill and averred that respondents did not know for what purpose the certificates of stock were transferred to the name of Miss Foster in the manner described in the bill—whether the testator intended that they should thus be held for his own convenience, and then transferred to himself, or whether he intended to make a gift of them to her ; and the respondents leave these questions to the determination of the court ; but they deem it proper, under the advice which they have received from their counsel, to submit that if it could be shown to have been Mr. Thomson's intention, in causing the certificates to be made out in the name of Miss Foster, to make a gift of the stocks to her, she was not informed of such an intention on his part, and no delivery of the same was made to her, but he appears to have retained them in his own custody and possession, and under his own exclusive control ; that in point of fact and law the purpose now imputed to him was not carried out, and that the certificates remained his own property, and became that of his estate.

The answer also averred that there were a number of pending and undetermined claims against the decedent's estate, which aggregated about a million of dollars, the result of some of which could not be foretold.

The case was heard before Thayer, P. J., and Briggs, J., the former delivering the following opinion :—

" The question to be decided is, whether the mortgage-bonds of the railway company, into which the shares of the Pennsylvania Company were converted, belong to the plaintiff or to the estate of Mr. Thomson ?  Of course the ownership of the bonds follows the ownership of the shares. · If the shares were the property of the plaintiff, the bonds unquestionably belong to her, and she is entitled to the relief prayed for.

" It is to be observed at the outset that here was a complete, perfect and absolute transfer of the legal title to Miss Foster.  The shares were transferred to her on the books of the company, by direction of the owner, and new certificates were taken out in her name.  The plaintiff stands in no need of legal or equitable remedies to complete her legal title.  The only relief which she needs and prays for, is that her title be relieved from the claims of the administrators and trustees of Mr. Thomson's estate, and that the bonds into which the shares were converted by her own agency, be surrendered to her.  It is not the case, therefore, of an incomplete voluntary gift, or of a merely equitable title to a chose in action, acquired by an assignment which remains in the possession of the assignor.  A gift of a chattel is not consummated and perfected until the delivery of the thing promised, and until then the party may revoke his promise.  So also an assignment of a chose in action (*e. g.*, a bond: Zimmerman *v.* Streeper, 25 P. F. Smith 147 ; or a policy of insurance: Trough's Estate, 25 Id. 115 ; or a single bill: Pringle *v.* Pringle, 9 Id. 281 ; or a certificate of deposit : Withers *v.* Weaver, 10 Barr 391), where the assignor retains possession of the chose, or of the assignment, passes no title to the assignee or donee ; and the reason is that the retention of the chose, or of the assignment, is unmistakable evidence that the assignor, whatever his future intentions might be, has not parted with his property in the thing over which he retains entire control.

" If Mr. Thomson had suffered these shares to stand in his own name, and had executed to Miss Foster an assignment of them, and had retained that assignment in his own possession until his death, never having delivered it to her, there would seem to be no doubt under the decisions that no property in the shares would have passed to her.  And the result would have been the same if he had given her a parol assignment of them without valuable consideration, still retaining the shares in his own name, unless, indeed, circumstances could be shown amounting to a declaration of trust on his part to hold them for her use.  But here the gift is complete

by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books. There was here no *locus pœnitentiæ*. He could not have used the certificates, nor could any one have used them except Miss Foster.

" We are of opinion, therefore, that the cases relied upon by the defendants' counsel upon the subject of incomplete gifts of chattels and of undelivered assignments of choses in action, have no application to the circumstances of the present case, for here was a complete divestiture of his own title and a complete investiture of title in her, so complete that he had no further control over the legal title and no power, without her consent, to undo or disturb it.

" This brings us to what appears to us to be the real question in this case, and that is, whether there is here sufficient evidence to rebut the presumption of a resulting trust, which always arises where a conveyance has been made without consideration to one, of an estate or other property which has been purchased with the money of another. The presumption of such a resulting trust is always rebutted, where, to use the language of the books, the purchase may fairly be deemed to be made for another, from motives of natural love and affection. Thus a purchase in the name of a child or of a wife is uniformly held by the unaided force of the relationship alone to rebut the presumption, unless there be clear evidence to show that the donee was intended to be a mere trustee. It would be a useless waste of time to go over the cases establishing this doctrine. They have been industriously collected in the paper book of the plaintiff's counsel and are familiar to the profession. The doctrine is too well established to admit of the least doubt. It is not controverted by the defendants' counsel ; but it is contended that the presumption of a resulting trust cannot be rebutted in the present case because the donee is not related by blood to the donor.

Yet the ordinary case of a gift to a wife shows conclusively that blood is not a necessary ingredient to give effect to the presumption rebutting such a trust. The presumption in favor of a wife or child, which rebuts the resulting trust, is doubtless founded on the moral obligation which rests on the donor to provide for them, and the inference which arises therefrom, that it was the intention of the donor thus to provide for them, and that they should not hold as trustees. But why may not the presumption also arise where these relationships do not exist, if there is clear evidence to show that such was the manifest intention of the donor?

" It is quite clear that other circumstances and other relations in life, besides the relationship of parent and child, or husband and wife, may sufficiently rebut the presumption of a resulting trust. Thus a gift to a sister : Kiddill *v.* Farnell, 5 Weekly Reporter 424 ; a grandmother to grandchildren : Gardner *v.* Merritt, 32 Md. 78 ; 10 Am. Law Reg. N. S. 127 ; a step-father to a step-child : Ray *v.* Simmons, 15 Id. 702 ; a relation by marriage : Currant *v.* Jago, 1 Collyer 261. Now whether there is, or is not, a resulting trust, must, as was said by Lord Hardwicke in Hill *v.* The Bishop of London, 1 Atk. 618, always depend upon the intention of the grantor. As the presumption which arises in favor of a wife or child is founded exclusively upon the intention of the grantor inferred from the relationship, it would be extremely illogical to hold that a like presumption could not be derived from other circumstances clearly showing the same intention, and especially from proof of the express and deliberately declared wishes of the grantor.

" There is no magic virtue in blood in such cases, except in so far as it gives rise to a strong, and unless rebutted, a conclusive presumption of the grantor's intention. What, then, was Mr. Thomson's intention in the present case ? If he had declared in so many words, that this was not to be a resulting trust in his own favor, and that Miss Foster was not to be a trustee, but a beneficiary, would any one doubt that the presumption of a resulting trust would be rebutted, notwithstanding the fact that she was only connected with him by marriage, and by the ties of an affection which he himself declared to be as strong as the ties of parental affection ?

" We are to look for the intention of the grantor in his acts and expressions. By his own act he invested her with the complete legal title to these shares. With what intention ? That she should be a trustee for him ? For what purpose ? What possible motive can be attributed to him for having these shares transferred to her upon the books of the company, and thus putting them entirely beyond his own control, if he did not intend her to take as a beneficiary ? Was she a stranger to him ? Let him answer for himself. Three days before his death, he wrote in the codicil to his will :—

" ' I desire my dear niece, Lottie Foster, but to whom I cherish

the feelings of a father, to be so treated and regarded in the law as if she were really my own child.'

" And on the day before he died he repeated it:—

" ' I wish my niece, Charlotte F. Foster, to be considered as my daughter.' Let it be remembered, also, that these declarations were made less than two months after he had transferred the shares to her.

" It seems to us, that to decide now that she cannot take as a beneficiary, but must be held to be a trustee *propter defectum sanguinis*, would be to fly in the face of the plainly-expressed intentions of Mr. Thomson, and to override what cannot but be regarded as his most urgent dying request. There is, no doubt, a great deal in blood, as indicating the intention with which such an act as this is done. But there is also a great deal in the fact that a childless man takes to his home and heart an orphan child—a near relation of his wife, and dependent upon him for support—and plants her there in the place of a daughter, treats her in all respects as a daughter, and in one of the most solemn acts of his life declares that, in measuring her legal rights, he desires her to be considered, in all respects, as if she were really his daughter. It would be a mockery of reason, and an unjust perversion of a wholesome principle, to apply the presumption of a resulting trust, because she is not a child, when the author of the gift so solemnly and so emphatically declares that he desires her ' to be treated and regarded in law as if she were really his child.' The principle which raises a resulting trust where there is a conveyance to a stranger, or where there is not evidence of a manifest intent that the grantee should take as a beneficiary, is a principle founded in wise and just considerations; but it is not to be applied indiscriminately, or where there are facts and circumstances which fairly rebut it.

" Looking at all the circumstances of the case, and giving effect to the declared wishes of Mr. Thomson in reference to the legal status and rights of Miss Foster, we are of opinion that the presumption of a resulting trust is in this case fully and fairly rebutted; that she has a perfect legal and equitable title, and is entitled to the relief prayed for. Accordingly, let there be a decree for the plaintiff."

After a decree entered in accordance with this opinion the defendants took this writ, assigning the entry of this decree for error.

*William A. Porter*, for appellants.—A voluntary gift is of no effect unless executed by the transfer of the property intended to be given, and by the delivery of the usual evidences of the title to such property: Antrobus *v.* Smith, 12 Vesey Jr. 39; Noble *v.* Smith, 2 Johns. 52; Pearson *v.* Pearson, 7 Id. 26; Plumstead's Appeal, 4 S. & R. 544; Lee *v.* Luther, 5 Wood. & M. 519; In re Campbell's Estate, 7 Barr 100; Withers *v.* Weaver, 10 Id. 391;

Lonsdale's Estate, 5 Casey 407 ; Kidder v. Kidder, 9 Id. 268 ; Pringle v. Pringle, 9 P. F. Smith 281 ; Trough's Estate, 25 Id. 115 ; Zimmerman v. Streeper, 25 Id. 147 ; Trimmer v. Danby, 25 L. J. Ch. 424.

A purchase or conveyance made with the money of one in the name of another, raises a legal presumption of a resulting trust.in favor of the former : Lloyd v. Spillet, 2 Atk. 148 ; Kisler v. Kisler, 2 Watts 323 ; Jackman v. Ringland, 4 W. & S. 149 ; Lynch v. Cox, 11 Harris 265 ; Brabrook v. Boston Five Cent Savings Bank, 104 Mass. 228 ; Clark v. Clark and Trustee, 108 Id. 522.

The consideration of blood or natural affection is insufficient to support even a promise to give, where the promise has not been performed.

As far back as the reign of Elizabeth, it was held in the case of Bret v. J. S. et ux., Cro. Eliz. 756, that " natural affection of itself is not sufficient consideration to ground an assumpsit." Also, in the same reign, in the case of Harford v. Gardiners, 2 Leonard 30, the court say : " Love is not a consideration upon which an action can be grounded—the like of friendship." See also, Mills v. Wyman, 3 Pick. 207 ; Fink v. Cox, 18 Johns. 145 ; Kennedy's Ex'r v. Ware, 1 Barr 445 ; Lyon v. Marclay, 1 Watts 271.

*A. Sydney Biddle* and *George W. Biddle*, for appellees.—A court of chancery will give effect to a perfect gift by declaring the donee's rights : Langdon v. Allen, 1 W. N. C. 395 ; Sidmouth v. Sidmouth, 2 Beav. 447 ; Ellison v. Ellison, 6 Vesey 656 a, 661 ; Tierny v. Wood, 19 Beav. 330 ; Parnell v. Hingston, 3 Sm. & G. 337 ; Gilbert v. Overton, 2 Hemming & Miller 110.

Where a voluntary gift has been perfected it cannot be revoked : Clavering v. Clavering, 2 Vernon 473 ; Boughton v. Boughton, 1 Atk. 625 ; Knye v. Moore, 1 Sim. & Stu. 61 ; Simonton's Estate, 4 Watts 180 ; Rycroft v. Christy, 3 Beav. 238 ; Sidmouth v. Sidmouth, supra ; Cressman's Appeal, 6 Wright 147.

The mere fact that the instrument by which the gift operates, or which is the evidence of the completion of the transfer, is retained by the donor, does not render the gift revocable. Nor if the property given is a fund, does the fact that the donor retains possession and control of it divest an executive gift : Worrall v. Jacob, 3 Meriv. 256 ; Knye v. Moore, supra ; Sidmouth v. Sidmouth, supra ; Browne v. Cavendish, 1 Jones & Latouche 606 ; Kiddill v. Farnell, 5 Weekly Reporter 324 : Evans v. Jennings, 6 Id. 616 ; Langdon v. Allen, supra. Knowledge by the donee that the gift has been made, is not necessary to its completeness or irrevocability : Clavering v. Clavering, supra ; Sidmouth v. Sidmouth, supra ; Langdon v. Allen, supra ; Smith v. Lyne, 2 You. & Col. Ch. 345 ; Middleton v. Pollock, Ex parte Elliott, Law Rep. 2 Ch. Div. 104. A thing given is completely transferred where the legal title has actually

[Roberts's Appeal.]

vested in the donee: Ellison *v.* Ellison, *supra;* Xenos *v.* Wickham *et al.*, 14 C. B. N. S., 108 E. C. L. R. 435, 860; Fowkes *v.* Pascoe, Law Rep. 10 Ch. App. 343, 349; Middleton *v.* Pollock, *supra.*

No presumption of a resulting trust where purchase is made for one standing in relation of child, as in this instance: 2 Story's Eq. J., § 1202; Dyer *v.* Dyer, 2 Cox 92; Glavister *v.* Hewer, 8 Vesey 195; Rider *v.* Kidder, 10 Id. 367; McIntire *v.* Hughes, 4 Bibb (Ky.) 186; Dennison *v.* Goehring, 7 Barr 175.

See also the following cases, bearing upon the several propositions above: Ray *v.* Simmons, 15 Am. Law Reg. N. S. 701; Hill *v.* Stevenson, 63 Me. 364; Howard *v.* Windham County Savings Bank, 40 Verm. 597; Millspaugh *v.* Putnam, 16 Abbott's Prac. 380; Gardner *v.* Merritt, 32 Md. 78; Currant *v.* Jago, 1 Collyer 261.

The judgment of the Supreme Court was entered, June 26th 1877,

PER CURIAM.—The decree in this case is to be affirmed for the reasons given by the learned judge in the court below.

> Decree affirmed, with costs to be paid by the appellants, and the appeal is dismissed.