## APPEAL OF JOHN J. O'NEILL, JR., ET AL., EXECUTORS, ESTATE OF JOHN O'NEILL, DECEASED.

Docket No. 5185.   Submitted December 11, 1925.   Decided April 23, 1926.

*Wm. E. Howe, C. P. A.,* for the taxpayer.
*J. S. Halstead, Esq.,* for the Commissioner.

Before SMITH, JAMES, LITTLETON, and TRUSSELL.

This appeal is from the determination of a deficiency in estate tax in the amount of $8,993.47, of which amount only $5,743.50 is in controversy. The question in issue is whether 250 shares of stock of O'Neill Brothers, Inc., of a value of $81,500, belonged to the decedent at the date of his death.

### FINDINGS OF FACT.

John J. O'Neill, Jr., one of the petitioners, is the son of John O'Neill, who died on March 12, 1922, a citizen and resident of the City of Philadelphia, Pa. In inventorying the property left by the decedent the appraisers inventoried 750 shares of stock of O'Neill Brothers, Inc. These shares of stock were evidenced by two certificates, one for 500 shares standing in the name of the decedent, and the other for 250 shares standing in the name of John J. O'Neill, Jr., which certificate was endorsed in blank by the owner, and found in the safety deposit box of the decedent.

On February 8, 1917, John J. O'Neill, Jr., was an employee of O'Neill Brothers, Inc. His father had promised to make him a gift after he reached his majority. February 8, 1917, was the son's twenty-first birthday, and on that date the father made the son a present of the 250 shares of stock in question. Prior to that date the father held certificate No. 2 for 750 shares of stock of O'Neill Brothers, Inc. This was turned in to the corporation by the father and two new certificates were issued by the corporation on February 8, 1917, as follows:

Certificate No. 5 of 500 shares to John O'Neill.
Certificate No. 6 of 250 shares to John J. O'Neill, Jr.

The son kept his certificate until he was called into the military service, and in January, 1918, before he went away, he endorsed it in blank and delivered it to his father. It was the expectation of the son that he would soon go overseas and he desired his father to keep the certificate for him. Before the son left the country, and when he delivered the certificate to his father, he requested his father to vote the shares of stock for him. He also had an agreement with the father that he was to supply him with funds in place of the dividends he would have received on the stock, which agreement was carried out. The son was away for 13½ months. When he came back he gave no thought to the certificate of stock. The father bought the son an automobile and said that about squared up the dividend account.

After the son was mustered out of the military service he again went to work for O'Neill Brothers, Inc. His father became ill in 1921, and no thought was given by the son to the certificate of stock until 1922, when he discovered that it had been inventoried as belonging to the estate of his father. He protested.

The will of the decedent provided in part as follows:

FOURTEENTH. All shares of stock of O'Neill Brothers, Incorporated, of which I may be the owner at the time of my decease, shall be divided into as many parts or shares as there shall be sons of mine then living and sons of mine then dead represented by descendants then living, the share falling to each set of descendants being sub-divided amongst them per stirpes, upon the principle of

representation. To each of my sons and descendants of dead son who shall then be found entitled, I give and bequeath his or her shares of said stock.

The decedent left two sons (one of whom was a minor at the date of the death of the decedent), three daughters, and his widow. The family decided that it was probably the wish of the father that the younger son should have as many shares of stock as the older son, and, accordingly, the older son, one of the petitioners, gave to his younger brother 125 shares of the stock represented by the certificate standing in his name.

The question as to the ownership of the stock came before the Orphans' Court of Philadelphia County at the April term, 1923, and the court, in its order dated May 16, 1923, ruled as follows with respect to the shares of stock in question:

> The accountants are charged in the inventory and appraisement with 750 shares of O'Neill Brothers, Incorporated; of this stock 250 shares are represented by a certificate issued in the name of John J. O'Neill, Jr., the stock represented by the certificate having been transferred to him by the testator in his lifetime; why these shares were included in the inventory does not appear, but the fact that the stock was duly assigned and transferred on the books of the Company is *prima facie* evidence of ownership in the persons whose name appears in the certificate, and in the absence of evidence to the contrary, and upon the authority of *Robert's Appeal*, 85 Pa. 84, the Auditing Judge finds that the stock under discussion is the property of testator's son, John J. O'Neill, Jr. (or by whatever name he is known) and the accountants are directed to deliver the same to him. It necessarily follows that the claim of the commonwealth to receive a tax on these shares must be dismissed.

Certificate No. 6 for 250 shares of stock of O'Neill Brothers, Inc., standing in the name of John J. O'Neill, Jr., was not a part of the estate of John O'Neill, deceased.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*