KATHRYN LAMMERDING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WALTER H. HILDICK, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HELEN A. K. HILDICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 89003, 89004, 89005. Promulgated September 29, 1939.

*Frederic E. Mygatt, Jr., Esq.*, for the petitioners.
*Frank M. Thompson, Esq.*, for the respondent.

# 590

DISNEY: These proceedings involve determinations of deficiencies in income tax of the petitioners, residents of New Jersey, for the year 1934.

The cases were consolidated for hearing.

None of the petitioners filed any Federal income tax return for the taxable year 1934. However, after Walter H. Hildick discussed with a revenue agent of the Commissioner tax liability of petitioners for 1934, and with a view to settling their tax liability, petitioners filed waivers of restrictions on assessment and collection of deficiency in tax for the taxable year ended December 31, 1934. Thereafter petitioners were assessed income tax for 1934 and paid same, as follows:

Kathryn Lammerding, Docket No. 89003_____ $262. 40
Walter H. Hildick, Jr., Docket No. 89004_____ 138. 60
Helen A. K. Hildick, Docket No. 89005_____ 1, 774. 04

Later, under date of February 15, 1937, the Commissioner by deficiency notices advised petitioners that they were liable for deficiencies in tax and penalties for 1934, as follows:

|  | Deficiency | Penalty |
|---|---|---|
| Kathryn Lammerding | $1, 721. 85 | $496. 06 |
| Walter H. Hildick, Jr | 644. 28 | 195. 72 |
| Helen A. K. Hildick | 6, 915. 28 | 2, 172. 33 |

The petitioners deny not only their alleged liabilities as last above set out, but claim they should have refunded to them, with interest since date of payment, the respective amounts paid by them under the original assessment as heretofore herein stated, on the theory that no tax was due from any of them.

As a basis for their appeals petitioners claim (1) that the Commissioner erred in determining as *taxable income* to them in 1934 the receipt by them of certain amounts in excess of the amounts of certain loans made by them to Walter H. Hildick and repaid to them by the transfer to them of certain stock, the excess value of the stock over the loans being claimed as a gift by petitioners, and (2) that the Commissioner erred in determining that at the time the stock involved herein was transferred to them or put in their names in May 1934, it then became theirs and had a fair market value of $26⅛ per share.

Helen A. K. Hildick is the wife of Walter H. Hildick and Kathryn Lammerding and Walter H. Hildick, Jr., are, respectively, the daughter and son of Walter H. Hildick.

In January and February 1932, the three petitioners loaned to Walter H. Hildick cash, as follows:

Helen A. K. Hildick_____ $5, 471. 55
Kathryn Lammerding_____ 4, 000. 00
Walter H. Hildick, Jr_____ 1, 500. 00

At the time the loans were made to Walter H. Hildick by his wife, daughter, and son, no definite dates for repayment of the loans were set, but there was an understanding that interest would be paid at 6 percent per annum and that each lender would participate in any profits arising from the operation or sale of the properties acquired.

In addition to loans from members of his family, about the same time, in February 1932, Walter H. Hildick borrowed $1,250 from Richard F. Roth, a business associate, under an understanding similar to that made with the members of his family.

Helen A. K. Hildick received no security for her loan, but received two demand notes of Walter H. Hildick amounting to $5,471.55. Kathryn Lammerding received no security for her loan and no note. Neither of the two received any income in 1934 through dividends or interest as such. Walter H. Hildick, Jr., received no security for his loan, but received a note of Walter H. Hildick for $1,500. At that time Walter H. Hildick, Jr., was employed on a salary of $1,800 a year, his only source of income. He was married, but had no dependents other than his wife.

The loans to Hildick from his wife, daughter, and son and Richard F. Roth were made to enable him to purchase at a receiver's sale about February 1932 certain properties or plants of the Hildick Corporation, a bankrupt, of which he had formerly been president and principal stockholder. He bought them in for $15,025. The plants so purchased were transferred and turned over about September 1933 to a new corporation, the Distilled Liquors Corporation, in exchange for its stock. The corporation at that time had no other property.

Walter H. Hildick at the time he turned the plants over to the corporation had them appraised, but on what basis and at what figure the record does not disclose. He received 32,000 shares of stock and 35,000 warrants from the Distilled Liquors Corporation in exchange for the plants and became the president of the corporation. The warrants gave the owner the privilege of converting them into stock at $15 a share (on what basis is not further shown by the record) any time prior to November 1, 1938. The stock of the corporation was first traded in over the counter and, later, on the Produce Exchange and the Curb Exchange. After Walter H. Hildick received his stock as much as 70,000 shares of Distilled Liquors Corporation stock were sold publicly.

A total of 105,000 shares of stock of the Distilled Liquors Corporation was ultimately issued and outstanding, of which Walter H. Hildick owned approximately 21 percent. The cost price of the stock to Walter H. Hildick was 40%10 cents per share. The first stock issued to the public was in October 1933. It was then readily subscribed for and was sold at $15 per share. By the end of December 1933, or early in January 1934, the stock was selling for $13 per share. Early in May 1934 the stock was selling at $31 to $32 per share, and at the end of that month at from $25 to $26 per share.

At or about the time of the transfer of his plants to the Distilled Liquors Corporation in 1933, Walter H. Hildick decided to set apart, out of the stock received by him, for his wife, daughter, and son, the following number of shares:

| | |
|---|---|
| For Helen A. K. Hildick | 2,000 shares |
| For Kathryn Lammerding | 1,000 shares |
| For Walter H. Hildick, Jr | 500 shares |

About the same time, in 1933, he told petitioners that he had set stock aside for them.

When he so decided to set apart the stock, Walter H. Hildick was under a restrictive agreement not to sell, alienate, or transfer any of his stock and this restriction lasted until April 15, 1934. The certificates of stock originally decided to be so set aside as stated were not in fact separated and placed in different envelopes or receptacles for the respective parties for whom intended, nor was there then any transfer or endorsement of the stock to them. Hildick testified that he had decided the amount of stock which he was going to give his family when he was permitted to do it. The stock was not then even seen by the petitioners, nor was the amount intended for each made known to them.

On the termination of the restrictive agreement above mentioned, on April 15, 1934, the market was declining and Walter H. Hildick entered into another restrictive agreement with Richard Whitney & Co. not to transfer any of his stock in the Distilled Liquors Corporation but to continue to hold it while they were trying to make a market for it, and it was not until May 31, 1934, that he transferred 3,500 shares of stock to the petitioners and put it in their names on the records of the transfer agent of the company, in the amounts heretofore indicated. This was done pursuant to the agreement made with the family in January and February 1932, and in liquidation of the loans and the obligations arising under the agreement. Hildick's wife knew of the transfer of stock to her at the time of transfer. Hildick retained physical possession of the certificates of stock, keeping them in his safe deposit box, and none of the petitioners, except Walter Hildick, Jr., in fact, ever saw

the stock until in 1935 or 1936. Walter Hildick, Jr., saw his stock in 1935, when he endorsed the certificates.

The value of the stock transferred to his wife, daughter, and son by Walter H. Hildick was not computed by him on the basis of its fair market value, but the value of the stock transferred to his wife was figured at about $3 per share, the stock transferred to his daughter was valued at approximately $4.50 per share, and the stock transferred to his son was valued at about $3.60 per share.

At a date not shown by the record, Hildick delivered to Richard F. Roth 100 shares of stock of the Distilled Liquors Corporation in liquidation of the loan from him of $1,250 and in fulfillment of the agreement with him similar to that with Hildick's wife, son, and daughter.

In Walter H. Hildick's income tax return for 1934, which he signed, and with the contents of which he was familiar, under the heading "Profit or loss from sale of stocks, bonds, real estate" there was entered an item of stocks, with September 1933 as date acquired, May 1934 as date sold, and $14,301.38 as amount realized. The $14,301.38 represented the three loans from Hildick's family, Richard F. Roth, and two other small loans from his family, with interest to May 31, 1934, and represented to Walter H. Hildick the cost of the stock to him.

During 1936 all the shares of Kathryn Lammerding and Walter H. Hildick, Jr., were sold by their father and the proceeds turned over to them. During the same year, 1936, 500 shares of Helen A. K. Hildick's stock were sold by Walter H. Hildick at her insistence and the proceeds turned over to her. Hildick's wife wanted him to sell more, and he would not do it, so she sold 1,500 shares short, and made actual delivery of the stock in January 1938. He turned over to her in April 1936 the certificates for the remaining 1,500 shares belonging to her. When the stock (of all the petitioners) was sold it brought approximately $11 per share.

Petitioners contend that they did not receive and become the owners of the stock in issue in 1934, but received it and became the owners of it in 1933 or 1936 (with respect to the stock transferred to Helen A. K. Hildick) and in 1933 or 1936 or never (with respect to the stock transferred to Kathryn Lammerding and Walter H. Hildick, Jr.), and therefore had no income in 1934 arising from or growing out of the transfer of the stock to the petitioners. Petitioners further contend that the value of the stock involved was not its market price because the market was "made" and because of restrictive agreements; moreover, that any value of the stock when received, as aforesaid, above the loans was a gift from Walter H. Hildick.

The transactions with respect to the loans involved herein were between members of one family, all of whom testified and were the only persons who testified at the hearing. Their testimony touching certain phases of the transactions is in some respects rather indefinite and inconsistent and statements made in explanation thereof have not been altogether satisfactory or convincing. This, possibly, in some measure may be accounted for by the fact that the transactions were between members of the same family and, though of a business nature, probably were conducted more loosely or carelessly and impressed on their minds and memories less forcibly than would have been the case if the interested parties had not been related.

After carefully considering the entire record and giving due weight to the testimony of the witnesses, in connection with other evidence, we find that the statement made by Walter H. Hildick in a letter written by him under date of December 31, 1935, to or for the attention of Jacob Asaroff, Internal Revenue Agent, containing the statement: "At the time these loans [loans in question] were made there was an understanding that interest would be paid at 6% per annum and that each lender would participate in any profits arising from the operation or sale of the properties acquired", correctly represents the understanding or agreement between Walter H. Hildick and the petitioners (and Richard F. Roth) with respect to the loans made by them to him and involved herein, and therefore that petitioners received the excess stock, not as a gift, but in conformity with the agreement of loan and settlement of that obligation, and that the stock was the basis of income to them. Neither Walter H. Hildick nor petitioners are shown to have reported such alleged gifts in tax returns. Moreover, the same letter shows a similar arrangement with Richard F. Roth, a business associate, a loan from him, and discharge by stock of the Distilled Liquors Corporation. Obviously, this financial transaction with a business associate, bearing 6 percent interest, should not be called a gift; yet it is, as to interest and manner of discharge, and in the language of Walter H. Hildick, similar to that with his wife and children. The transfer of stock was "Pursuant to this agreement"—the agreement in 1932—and "in liquidation of these loans and the obligation arising under the agreement." We decline to call this transaction one of gift. The petitioners urge that the letter to the revenue agent disclosing the above facts was written at the suggestion of the revenue agent, and Hildick testified that it was without consulting his attorney. One does not need an attorney's advice in order to state the truth. After comparing the contents of the letter with the testimony, we conclude that the letter speaks the truth.

We think that Hildick, his wife, daughter, and son, and Richard F. Roth entered into a transaction in the nature of a joint venture, which as to the Hildick family continued until May 31, 1934, when Hildick transferred to his family on the corporate records the corporate stock here involved. It did not end with the incorporation of a company in September 1933, when Hildick simply incorporated the properties theretofore purchased, receiving the entire stock of the corporation in consideration of the properties. The treatment accorded by all the parties to this change in form of ownership of the properties indicates that they did not consider it a termination of the joint venture, but a mere continuation thereof. Moreover, the restrictive agreement then in effect prevented an end of the venture by distribution, Hildick being prevented from transferring the stock. The distribution and the incidence of profit or loss occurred on May 31, 1934, when stock was transferred to the participants. We therefore further find as a fact that the petitioners on and not before May 31, 1934—the date on which shares of the stock of the Distilled Liquors Corporation were transferred to, and put in the names of, petitioners as follows: 2,000 shares to Helen A. K. Hildick, 1,000 shares to Kathryn Lammerding, and 500 shares to Walter H. Hildick, Jr.—acquired right and title to the shares of stock in the amounts above indicated. Though possession of the certificates was retained by Walter H. Hildick, there were no conditions attached to the transfer of the stock. The physical retention by Walter H. Hildick of the certificates of stock until 1936 was, in our opinion, for the benefit of and as the representative of, or trustee for, the petitioners. Petitioners have not demonstrated to the contrary. Though the burden is upon them, they have failed to show any exercise of dominion over the stock by Hildick after May 31, 1934, such as receipt of dividends or voting the stock. The sales made by him were for the wife. The son says that he sold his stock. The stock having been transferred to the wife and children upon the records of the transfer agent on May 31, 1934, under all the circumstances here involved, actual delivery of the certificates was not necessary to passage of title in the stock to the children. Thompson on Corporations, vol. 4, pp. 810, 811; *Roberts' Appeal*, 85 Pa. St. 84; *White* v. *Salisbury*, 33 Mo. 150; *Chester Glass Co.* v. *Dewey*, 16 Mass. 94.

In *Marshall* v. *Commissioner*, 57 Fed. (2d) 633, we were reversed and the court held that there was delivery where shares of stock were transferred to the name of petitioner's wife upon the books of the corporation, the court saying:

\* \* \* Transfer upon the books of the corporation in itself constitutes a delivery. *Roberts' Appeal*, 85 Pa. 84. The transferee then becomes the legal owner. Mrs. Marshall had executed no broad power of attorney authorizing

her husband to indorse her certificates of stock, as in *White, Collector* v. *Bingham*, supra. Dividends were paid by check drawn to her order. What she did with these checks after receipt is a matter of complete indifference. The stock was not indorsed and redelivered to her husband, and could not thereafter be transferred, or the dominion and ownership of the petitioner thereafter be regained, except through the independent and voluntary act of his wife. * * *

We relied upon that decision in *D. B. Malernee*, 31 B. T. A. 662, in holding that there was completed gift where stock was transferred on the books of the corporation from petitioner to his wife. We stated: "This constituted a sufficient delivery, and vested legal title in the donee." The petitioner retained the certificates issued to his wife in his safe in an envelope containing other papers belonging to her. We likewise relied upon *Marshall* v. *Commissioner*, supra, in *J. M. Kessler*, 31 B. T. A. 849, in holding that there was completed gift without actual manual delivery where the petitioner endorsed in blank a certificate of beneficial interest in a trust, delivered same to a trustee with instructions to transfer to his wife, and the transfer was made upon the records of the trustee. We stated:

* * * The certificate of beneficial interest having been transferred to the donees upon the records of the trustee prior to the sale, it could not thereafter be again transferred, or the dominion and control of the petitioner regained for his personal benefit, except through the independent and voluntary action of the donees. Such transfer constituted delivery of possession and surrender of dominion. The gift was then complete * * *.

In *Essie Irene Gaffney, Executrix*, 36 B. T. A. 610, 614, petitioner's decedent in April 1922 and April 1923 caused corporate stock to be transferred as a gift to his wife on the books of a trust and of a corporation, but the stock certificates were kept in the decedent's safe deposit box, to which the wife did not have access until April 7, 1931. The decedent died in August 1932. Although after the transfer the decedent continued to participate in the direction of both companies, we held that there was completed gift, saying:

A gift is none the less valid and complete because the donee does not retain possession of the property after delivery. "The donor may retain possession if he does so as agent of the donee for safekeeping." *Brady's Estate*, 239 N. Y. S. 5. "After a gift is once complete and the title has passed to the donee, the fact that the donor subsequently has possession of the property given does not affect the validity of the gift." *Edson* v. *Lucas*, 40 Fed. (2d) 398.

Transfer of stock on the books of the corporation in itself constitutes a delivery, in the absence of evidence establishing lack of donative intent. *Marshall* v. *Commissioner*, 57 Fed. (2d) 633, citing *Roberts' Appeal*, 85 Pa. 84. It is only where it is affirmatively shown that the donor did not intend thereby to make a gift that transfer of stock on the books of the corporation is held to be insufficient. * * *

In *Dulin* v. *Commissioner*, 70 Fed. (2d) 828, corporate stock was delivered to the transfer officer of the corporation, with directions

to transfer to the wife of the former owner. The officer did not actually secure the former owner's endorsement, or transfer the stock on the books until a later date, but delivery to the officer was held delivery to the corporation as trustee for the wife, although there was no showing of the delivery of the certificates to the wife.

*Phillips* v. *Plastridge*, 179 Atl. 157, holds that intentional, voluntary, and unconditional transfer of title to corporate stock by the donor to his daughter, in whose name corporation issued certificates at donor's direction, is equivalent to actual delivery of the certificates, and that the donee's ignorance of the transaction is immaterial.

In *Lunsford Richardson*, 39 B. T. A. 927, we held that a gift of stock was effectuated upon May 27, 1932, prior to the effective date of the gift tax provisions of the Revenue Act of 1932 upon June 6, 1932. Therein petitioner had told the secretary and other officers of a corporate bailee that he had given the stock to his wife and to prepare necessary papers to transfer it to her. The secretary informed him that no transfer of record ownership was required, since the stock was registered in nominees' names, and that as officer of the corporate bailee he, the secretary, could have the stock placed in the wife's account; and thereupon the secretary made an entry upon the corporate bailee's cards containing a record of taxpayer's stock, to the effect that he had made a gift of the stock to his wife on May 27, 1932. The corporate bailee not being the corporation in which the stock was held, it is plain that no transfer whatever was made upon the books of the issuing corporation, as there was herein, and, as herein there was no actual delivery of the stock. The above citation requires a holding here that transfer of title was effected by the transfer on the corporate books on May 31, 1934. Petitioners themselves cite and quote from *Hoffman* v. *Commissioner*, 71 Fed. (2d) 929, in part as follows: "But the law is well settled that nondelivery of possession would not preclude title to the stock passing forthwith to Dorman if such was the intention of the parties.", citing *Hatch* v. *Oil Co.*, 100 U. S. 124; *Hammer* v. *United States*, 249 Fed. 336, and many other cases, and relying upon the statements and conduct of the parties as consistent with passage of title. It seems beyond argument that Walter H. Hildick's statements and conduct are consistent only with passage of title on May 31, 1934, for in his income tax return for that year he accounted for profit or loss from this stock as acquired in September 1933 (the date when the company was incorporated) and *sold* in May 1934, and $14,301.38 as the amount realized or cost of the stock to him; but $14,301.38 is the amount stated in his letter to the revenue agent, where he says that "The total amount of the loans, with accrued interest, was $14,301.38", and he testified that

this was computed to May 31, 1934. Plainly, Hildick considered, when he filed his income tax return for 1934, that on May 31, 1934, he transferred and disposed of his ownership of this stock to such extent that he must account for any profit or loss. He computed interest to the very day he transferred the stock to the family. We can conceive of no stronger indication that that date was the termination of his title. Moreover, he plainly recognized the stock as belonging to his wife and children. He says that on May 31, 1934, "I transferred some of my certificates to the members of my family, actually transferred them at the transfer agent's"; he says that in 1936 "I sold the stock of my son and daughter  *  *  *  and I sold five hundred shares of stock *belonging to my wife*." (Emphasis supplied.) A little later he refers to the other "1500 shares that belonged to my wife, and I turned those over to her in April 1936, she insisted upon selling them and I did not want her to do it, so she made her own arrangements and sold them." Her insistence indicates her view that the stock belonged to her before manual delivery. There is no proof that he had delivered to her before she sold, and her use of the word "short" as to her sale indicates otherwise. In addition, Walter Hildick, Jr., testified that some time before the sale he saw and endorsed the 500 shares of stock, he thinks in the fall of 1935, and that, though he knew that stock had been set aside for him, the first time he knew how much was in looking through some forms that were filed for the company, Distilled Liquors Corporation, in which all shareholders were listed and the amount of shares each one held, which was possibly in 1934 or 1935. The children were plainly leaving the matter largely to their father, and his conduct is in effect their own. Yet the endorsement by Walter Hildick, Jr., probably in 1935, indicates his recognition of ownership in himself. We think the whole line of conduct of the parties demonstrates passage of title to stock long before manual delivery, by transfer on the books May 31, 1934.

Petitioners agree, and cite cases to the effect that "the trend of the decision is towards nontaxability of stock where it is not available to the taxpayer because of restrictive arrangements, until the restrictions end", but they contend that the restrictions on transfer of the stock did not end until 1936. The evidence indicates, however, that the restrictions ended before May 31, 1934, the date when transfer was made to petitioners, for Walter H. Hildick testified:

 *  *  *  I could not transfer the stock because I was under a written contract with the underwriters not to sell or alienate or transfer any of my stock for a period of six months. That expired on the 15th of April. At that time, the market was declining and I entered into another agreement with Richard Whitney and Company to continue to hold my stock and not to transfer any while they were trying to make a market for it and it was not

until May the 31st, 1934, that I transferred these 3500 shares of stock to the members of my family, but I retained physical possession of them, they did not even see it, none of them, until 1936. * * *

The fair conclusion from this language is that Hildick kept his agreement, not to transfer, that it terminated before May 31, 1934, and permitted him to transfer on that day, as he did. Indeed, upon brief petitioners state that "* * * Hildick did have their stock transferred to the petitioners' names when the first restrictive agreement * * * expired." We think it plain that the restriction had expired when the transfer was made on May 31, 1934. As above stated, Hildick stated that he had decided the amount he was going to give them, his family, "when I was permitted to do it." Obviously, on May 31, 1934, he considered himself permitted to do it. Proof of any later restriction is vague and unsatisfactory. There is, in fact, no proof of restriction existing upon that date. It is obvious, of course, that a mere declaration of intent to transfer in 1933 did not effect a transfer in that year.

We, therefore, find and determine that upon the acquisition of the title to the stock in 1934, as aforesaid, each petitioner realized taxable income to the extent that the then fair market value of the stock acquired exceeded the amount of the loan made to Walter H. Hildick by said petitioner. *Rodrigues* v. *Edwards* (C. C. A., 2d Cir.), 40 Fed. (2d) 408.

The record shows that stock of the Distilled Liquors Corporation had been sold to the public on different dates at varying prices and that in the early part of the month of May 1934 the stock was selling around $31 or $32 a share and at the end of that month, as Hildick testified, around $25 or $26 a share. While the record does not show how many sales of the stock were made in May 1934, it does indicate that the original issue was readily subscribed for, that there were sales and the prices at which sold, thus indicating that the stock did have a market value. The respondent determined that the stock had in May 1934 an average fair market value of $26⅛ per share, on that basis determined that the stock transferred to the petitioners in May 1934 was worth $26⅛ per share, and on that valuation determined the income to the petitioners. It is true that the book value was $11.93 per share, and that such value was used by a revenue agent in connection with a tentative arrangement as to petitioners' income taxes for 1934, wherein they paid some tax, as above stated. However, valuation of the stock by the respondent is presumed to be correct, the evidence of market value in May 1934 is plain, and in our opinion there has been no evidence introduced by petitioners sufficient to overcome the presumption of the correctness of the respondent's determination as to fair market value of the stock.

The valuations put upon petitioners' stock by Walter H. Hildick—$3 per share, $4.50 per share, and $3.60 per share, as heretofore set out—were arbitrary and without, in our opinion, any sound basis for such valuations, since no good reason was given and none can be assigned why stock of the same kind and transferred at the same date should be of different values and not of the value of other shares of the same stock selling on the open market. We therefore affirm respondent's valuation of the stock as $26⅛ per share on May 31, 1934.

All of the petitioners admitted that they did not file income tax returns for the year 1934. Assuming that there may have been reasonable cause for failure of the petitioners to file timely returns for the taxable year (1934) in question, no returns ever were filed at any time by any of the petitioners and the imposition of the 25 per centum penalty addition to the tax as to each petitioner is, therefore, mandatory and the action of the respondent in so determining is approved. *Douglas L. Edmonds, Administrator,* 31 B. T. A. 962; affd. (9th Cir.), 90 Fed. (2d) 14; certiorari denied, 302 U. S. 713; *Sarah A. W. Coursey,* 33 B. T. A. 1068.

Reviewed by the Board.

> *Decision in each of the dockets will be in favor of the respondent.*