Estate of Walter Blair Roddenbery, Sr., A.C. and J. B. Roddenbery, as Executors of said Estate v. Commissioner.
Estate of Walter Blair Roddenbery v. Commissioner
Docket No. 16569.
United States Tax Court
1949 Tax Ct. Memo LEXIS 95; 8 T.C.M. (CCH) 781; T.C.M. (RIA) 49210; August 26, 1949
Sam P. Cain, Esq., Roddenbery Bldg., Atlanta, Ga., and J. L. Westmoreland, Esq., Wm. Oliver Bldg., Atlanta, Ga., for the petitioners. Bernard D. Hathcock, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in estate tax in the amount of $67,801.97 in the estate of W. B. Roddenbery, Sr., who died July 22, 1943. The questions presented are: (1) Did the respondent err in determining that decedent in his lifetime *96 did not make valid and complete gifts of certain interests owned by him in W. B. Roddenbery Company and Roddenbery Hardware Company to his sons, F. W. and W. B. Roddenbery, Jr., so that the value of said interests is includible in decedent's gross estate or, in the alternative, that such gifts, if valid and complete, should nevertheless be included in decedent's gross estate because of the provisions of section 811 (c) of the Internal Revenue Code? (2) Did respondent err in determining that decedent in his lifetime transferred to others certain corporate stock and real estate in contemplation of death? Findings of Fact Walter Blair Roddenbery, Sr., died July 22, 1943, age 81 years. He was a man of unusual physical and mental powers and enjoyed good health for his age. He was active physically and mentally until his last sickness which began six days prior to his death. His last will was dated June 2, 1942, and named petitioners as executors. They filed an estate tax return with the collector of internal revenue for the district of Georgia. Decedent left surviving him a widow and four sons whose ages at the time of the trial were as follows: A. C. Roddenbery
61 years
J. B. Roddenbery
56 years
W. B. Roddenbery, Jr.
48 years
Fred W. Roddenbery
43 years
*97 Decedent's gross estate at his death was returned at a value of $269,986.32. The Commissioner in his determination increased this value to $507,957.26. The net estate was returned at a value of $105,791.40 and the Commissioner increased this value in his determination to $342,931.89. For some time prior to 1910 the Roddenbery Hardware Co. was a corporation, in which decedent was a large stockholder. In 1909 A. C. Roddenbery entered the employment of the hardware store and before the dissolution of the corporation he bought ten per cent of the corporate stock and his father acquired the remainder. On August 1, 1935, W. B. Roddenbery, Sr., J. B. Roddenbery and A. C. Roddenbery formed a partnership to operate the hardware store and A. C. Roddenbery was manager thereof. At some time prior to 1915 W. B. Roddenbery, Sr., went into the business of manufacturing syrup and in 1919 his son, J. B. Roddenbery, became actively associated with him in that business. On October 20, 1927, W. B. Roddenbery, Sr., formed a partnership with his two sons, J. B. Roddenbery and A. C. Roddenbery in the syrup business. W. B. Roddenbery, Sr., at different times gave to his four sons partnership interests *98 in the two partnerships which were known as the Roddenbery Hardware Company and W. B. Roddenbery Company as follows: RODDENBERY HARDWARE CO.
Year
A.C.R.
J.B.R.
W.B.R. Jr.
F.W.R.
1935
30% *
20%
1939
5%
5%
1940
5%
5%
W. B. RODDENBERY CO.
1927
20%
40%
1932
5%
1935
5%
1939
5%
5%
1940
5%
5%
The transfers of partnership interest which the Commissioner determined to be invalid for estate tax purposes are those made in 1939 and 1940 to W. B. Roddenbery, Jr., and to F. W. Roddenbery. The memorandum of the partnership agreement which furnished the basis of the 1927 partnership of W. B. Roddenbery Company provided that J. B. Roddenbery and A. C. Roddenbery could not sell their interest in said partnership and that all profits from the same should remain the partnership. The formal partnership agreements of 1932 pertaining to W. B. Roddenbery Company and 1935 pertaining to both partnerships contained the following provisions: "The majority of the interest invested shall determine how much time each *99 member shall give to the business, appoint or select a manager or managers, and shall fix the salaries or compensation for said manager or managers, and each member of the partnership for services rendered, and shall also determine general policies for conducting said partnership. "No dividends shall be paid out at any time except from the profits of the business and shall be paid then only at such time and in such amount as a majority in the business shall determine. "It is agreed the partnership may be dissolved at any time by mutual consent of 75% of the interest invested. It is further agreed that the death of one or more of the members of the firm shall not of itself work a dissolution of the partnership but the business shall be continued and operated by the surviving partners and those representing the interest of each member or members. "It is understood and agreed that a member shall not sell or dispose of, pledge or encumber any part of his interest in said business without the written consent of all members of said firm." The gifts of 1939 and 1940 involved in this litigation were evidenced by letters from W. B. Roddenbery, Sr., to the members of the partnership *100 involved. Copies of these letters were given to each partner and the originals were filed with the manager of the partnership involved. These letters all contain the following provision: "These gifts are made with the understanding that the new partner in said firm [in 1940 the letter contained 'the new ownerships'] become subject to all of the terms and provisions of said partnership contract * * *." Decedent's will provided that at the death of decedent's wife or at his own death, if prior thereto, his ten per cent interest in W. B. Roddenbery Company be given one-half to J. B. Roddenbery and one-half to F. W. Roddenbery; and his twenty per cent interest in the Roddenbery Hardware Company be given one-half to A. C. Roddenbery, one-fourth to F. W. Roddenbery and one-fourth to W. B. Roddenbery, Jr. He directed the executors to preserve, if possible, the partnership assets intact in the administration of the estate and declared that his death should not cause the dissolution of the partnership. The will sets forth the decedent's testamentary intent as follows: "It is my desire and purpose that my property at mine and my wife's death shall be divided equitably among my children, *101 and any apparent discrepancies or inequalities appearing in this my will as to the amount given each one is due to prior gifts that I have made to my sons and to my knowledge of the work done by and cooperation given by each one in the creation or conserving of my estate, therefore, according to my best judgment there are in reality no discrepancies or inequalities in the gifts as provided herein. This statement is made to explain any apparent inequalities but in no way to change or affect the disposition of my estate as made herein." J. B. Roddenbery, on finishing school, began working for Roddenbery Hardware Company and also worked for his father in the syrup manufacturing business. On his return from the First World War in 1919 he devoted his entire time to working for his father in the syrup business. When W. B. Roddenbery Company was formed he was made manager and remained manager until the death of his father. Due to his initiative the business was expanded into preserving pickles and making peanut butter. In 1927 when the partnership of W. B. Roddenbery Company was formed the entire business was valued at $184,051.96. In the administration of W. B. Roddenbery's estate the *102 ten per cent interest which the decedent still held in that partnership was valued at $85,287.46. In 1928 W. B. Roddenbery, Jr., returned to Cairo, Ga., from New York and at the request of his father began working for the two partnerships. His father stated to him that he wanted him to have an interest in the business and before making the first transfer to him the decedent stated that he wanted W. B. Roddenbery, Jr., to do all he could to make the business a success. Fred W. Roddenbery began working for W. B. Roddenbery Company in 1927 and has worked continuously with it since that time. At the time of the hearing he was production manager. The Roddenbery Hardware Company opened a branch store in Tifton, Ga., in 1935 and largely due to this expansion and to the need for liquid capital no profits were paid out by either partnership other than to pay salaries and the income tax requirements of the partnership members. These amounts included not only the income tax for income from the partnership involved but for income from all sources. The business of W. B. Roddenbery Company, under the management of J. B. Roddenbery, was controlled by him almost completely and it was his policy *103 which controlled the distribution of profits. While partnership returns of income were filed with respect to W. B. Roddenbery Company for the fiscal years ended July 31, 1940, and July 31, 1941, showing the distributive shares of partnership income allocated to the several partners for income tax purposes, the partners were not credited with said distributive shares on the books of the partnership but each year's profits were credited to the capital account on the books of the partnership. The business of Roddenbery Hardware Company was under the management of A. C. Roddenbery to an extent similar to that of the management of W. B. Roddenbery Company under J. B. Roddenbery and the profits of this partnership were handled in substantially the same way since 1935. The decedent and his sons received salaries as compensation for the services rendered to the various businesses. On March 13, 1940, decedent gave his wife 100 shares of stock in Nehi Corporation. She had no income producing property and no other independent income at the time. In the early twenties she inherited from her parents farmlands of an undetermined value which W. B. Roddenbery, Sr., used in his business and *104 for which she never requested any repayment and he never made any repayment. On August 14, 1940, decedent gave his four sons fifty acres of land in Grady County near Cairo with the expressed hope that they establish homes on this tract. At the time the land was producing no income. On December 17, 1940, decedent gave his four sons a store building, a warehouse and a vacant lot in Cairo. The buildings were producing inadequate rental and were in urgent need of repairs. In this proceeding the Commissioner is contesting the validity of the three gifts above set out, as well as of the partnership interests hereinbefore mentioned. The itemized value of all of the gifts as set forth in the notice of deficiency is as follows: 20 per cent interest in W. B. Roddenbery Co.
$170,574.92
20 per cent interest in Roddenbery Hardware Co.
39,039.52
100 shares stock in Nehi Corporation
9,250.00
50 acres of land in Grady County
4,000.00
Cairo real estate
8,000.00
The various gifts made by W. B. Roddenbery, Sr., in the years 1939 and 1940 to the members of his family were valid and completed gifts not in contemplation of death, nor intended to take effect in possession *105 or enjoyment at or after death. Opinion The Commissioner first contends that decedent's gifts of partnership interests in 1939 and 1940 were invalid and incomplete because (a) they were subject to such conditions and restrictions that they were not valid and complete gifts inter vivos; and (b) at no time during decedent's life did the alleged donees have domination and control over the subject matter of the alleged gifts or the fruits thereof. The Commissioner bases his contention on the fact that the donees of the partnership interests accepted the same subject to all the conditions of the existing partnership agreement and thereby their partnership interests were subject to majority control as tl all partnership matters including the distribution of profits. Furthermore, the approval of a 75 per cent interest in the partnership was required to effect a partnership dissolution and no sale of partnership interest could be made without the unanimous consent of all the members. It is at once obvious that whatever restrictions were placed upon these partnership interests in the hands of the donees were a continuation of the restrictions which had pertained to those interests in *106 the hands of the donor. The donor added no restrictions; he merely transferred all the title he had in the partnership interests as free from restrictions as said interests were held by him. The restrictions continued as much against the donor's remaining partnership interests after the transfer as they were against those interests acquired by the donees. The donor reserved no power to convert any part of the income to himself, nor to divert the income or corpus to any new donee and there was no possibility of reverter. The donor had no more restrictive control over the corpus of the gifts than did any partner over the partnership interest of all other partners. Since the partnerships by agreement were to continue after the donor's death, that event had no controlling effect over the duration of the restrictions. If the gifts of partnership interests herein are invalid because accepted subject to the conditions in the existing partnership agreements then such interests are practically eliminated as subjects of valid gifts as long as the donor, after the gift, retains an interest in the partnership because all partnerships from their very nature impose some restrictions on private *107 capital investment in partnership enterprises. Accordingly, it would be a matter of interest to speculate as to why the Commissioner did not reject all the gifts of partnership interest made by the decedent herein. In the 1927 partnership agreement the donees agreed that no profits would be divided and that no partner could sell his interest. The Commissioner seeks to associate the question of gifts herein with the facts in Helvering v. Clifford, 309 U.S. 331. In that case the trustor made a gift to himself as trustee for the benefit of his wife of certain stocks, reserving to himself complete discretion in managing the trust property and distributing the trust income. The trust was limited to a five-year period at which time the corpus reverted to the trustor and the undistributed portion of the income to the beneficiary. The Court held that the restrictions reserved to the trustor made him the effectual owner of the trust property and that the distribution to his wife as trustee simply amounted to a division of family income. We can see no basis for comparison between that case and the case at bar. Nor do we discover any provision or intent in section 811 (a), I.R.C. *108 , or the regulations promulgated thereunder, which would classify the gifts of partnership interest involved herein as invalid for estate tax purposes. Gifts have frequently been substantiated as free from invalidating limitations on control by the donees where the donors reserved more control than exists in the case at bar. See Smith, Administrator, v. Commissioner, 59 Fed. (2d) 533; Estate of Lorenzo W. Swope, 41 B.T.A. 213; Kathryn Lammerding, 40 B.T.A. 589, aff'd. 121 Fed. (2d) 80. In Bingham v. White, 31 Fed. (2d) 574, the donor reserved the right to receive part of the income from the stocks which he had given to his wife. The Court in discussing the gift said: "Even if the donor had never intended that the gifts would deprive him of all benefits, the gifts were not thereby to be defeated." Certainly whatever benefit W. B. Roddenbery, Sr., received, or thought he received from the restrictions which the partnership agreements imposed upon the partnership interests which he gave away, those benefits were not to his individual profit and they did not prevent him from giving to his sons all the interests which *109 he as donor had in the property at the time of the gifts. It is our conclusion that the gifts were completed at the time they were made to the extent of the quantity of interest which the grantor had. The Commissioner's second contention is that the gifts of partnership interest made in 1939 and 1940 were made in contemplation of death because the will which was made about three years after four of the gifts and two years after the other four, mentioned said gifts in explanation of the size of some of the testator's bequests. The Commissioner deduces therefrom that the gifts and will constituted a single testamentary disposition. He relies on Igleheart v. Commissioner, 77 Fed. (2d) 704. In that case Igleheart, in June 1926, set up two trusts and made a will which disposed of all of his property on the same day. He died in December 1927, age 74. In 1915 he had suffered a paralytic stroke and thereafter, while his general health was normal, he was partially paralyzed on his right side, constantly used a cane and made no effort to return to his place of business. He spent the late fall and winter months in Florida. Prior to creating the trusts and making the will, he *110 discussed the matter with his brother and with his lawyer to arrive at the best method of protecting his wife after his death and preserving for himself security of income until death. If there is any analogy between Igleheart's disposal of his whole estate under such surrounding facts and the gifts of partnership interests made herein, we do not discern it. We also fail to see that the facts in Purvin v. Commissioner, 96 Fed. (2d) 929, are very similar to those in the case at bar. In that case plaintiff's decedent had made a deed of trust to Northwestern University and a will on the same day. He died 2 1/2 years later, age 78. The Court held that the deed and will were one testamentary transaction and approved the taxation of the annuities provided for in the deed of trust as a part of decedent's estate. United States Trust Co. of New York v. United States, 87 Court of Claims 721 is cited by respondent as authority for finding that the gifts and the will in the case at bar are one testamentary transaction, but the citation impresses us as a most potent authority for the petitioner herein. In the United States Trust Company case petitioner's trustor, in December 1915, *111 made a will and on the same day wrote out her intention to create a trust of certain property which she expected to inherit from her deceased husband when said property was received. Her memorandum was filed with the will. In December 1916, after the property was received, she created the contemplated trust. The Commissioner contended that the will and the memorandum being made on the same date, followed by the creation of the trust in the following year, laid a foundation for taxing the trust property as a portion of decedent's estate disposed of in contemplation of death. It is at once apparent that the facts in the United States Trust Company case are very much more favorable to the Government than are those in the case at bar, yet the Court of Claims decided against the Government and made this express finding: "The deed of trust executed December 27, 1916, was not made in the place and stead of that portion of her last will and testament setting up a substantially similar trust and was not in contemplation of death." All of the cases involving this question are primarily based upon the peculiar facts in each case and it is our conclusion in the light of all the facts in this *112 case wherein the gifts were made either two or three years prior to the will, wherein the gifts constituted but a portion of the donor's property, wherein the donor was in excellent health when the gifts were made and wherein there is not a scintilla of evidence that in making those gifts he was thinking of death, that a finding that the gifts were made in contemplation of death or as a part of his testamentary program in connection with the making of his will would not be justified. Our conclusion in that respect with reference to the gift of partnership interests practically disposes of the Commissioner's final contention that the gifts of stock to decedent's wife and of real estate to his sons in the year 1940 were made in contemplation of death. At the hearing the Roddenbery family physician was called to testify. He had known W. B. Roddenbery, Sr., practically all of the witness's life and he began practicing in Cairo and treating the decedent professionally in 1927. During all that time he had actually been called upon for one illness and that was an attack of influenza ten years before his death. Roddenbery had called upon him twice a year for a physical examination and *113 the witness in speaking of the decedent's physical condition just a short time prior to his death said: "[He] never carried any excess flesh, with the most unbounded energy I have ever seen in a human being, I think. Very alert. I think the smartest man I ever knew, college professors not excepted. I think Mr. Roddenbery had one of the keenest brains I have ever known * * * There wasn't the slightest deterioration in his mental acuity. From the time I can first remember he was a most remarkable man." Roddenbery's neighbors testified that he was a man active in civic, business and church affairs up to the last year of his life. On July 16, 1943, the date he suffered the attack of coronary occlusion which ended in his death, he had been working in surveying his farm and had made extensive work sheets showing the condition of the farm. He was optimistic at all times and there is no testimony in this case that he was activated by any contemplation of approaching death in anything he did. Just a few months before his heart attack the family physician purchased a new cardiograph and, in order to learn its operation, requested the salesman to demonstrate it on a patient. The patient *114 was W. B. Roddenbery, Sr., and at that time the salesman commented upon the perfect normality of the action of Roddenbery's heart tracings. In making the gifts of stock to his wife there is no evidence that he considered himself indebted to her for the property which he had used in their early married life but that fact did exist and it is in evidence that aside from the income from this stock Roddenbery's wife had no independent income of her own. The making of such a gift is entirely normal under the conditions existing in the case at bar. The deed to the fifty acres of land in Grady County, which was suitable for homes for decedent's sons, was also a normal purpose for a father who had devoted his whole life apparently to the welfare of his family and to holding the family together in a business way and socially to the extent of his ability. The deed of the partnership interests to decedent's younger sons was in line with a general plan which the evidence disclosed the decedent had developed from the dates that his sons first began to arrive at majority. The deed to the warehouse and store building, which were in need of repair and which were producing an unsatisfactory *115 rental income, was a normal act of a father who had all that he could well attend to in looking after his farm and he was desirous of promoting the welfare of his sons wherever possible. Such a gift was entirely associated with life and under the evidence herein was not made in contemplation of death. Support for our conclusions herein will be found in United States v. Wells, 283 U.S. 102; Genevieve B. Macaulay, 3 T.C. 354; Fletcher E. Awrey, 5 T.C. 222; Ralph O. Howard, 9 T.C. 1192; and Allen v. Trust Co. of Georgia, 326 U.S. 630. Decision will be entered under Rule 50. *
Footnotes
*. Added to the ten per cent interest which A. C. Roddenbery bought gave him a forty per cent interest.↩
*. Decision is as amended by Tax Court order dated September 28, 1949.↩