# Paxson's Estate.

*Orphans' court—Jurisdiction—Ownership of personal property—Decedents' estates.*

1. Where personal property is included in the inventory of an executor, but is claimed by another person, the orphans' court has jurisdiction to try and determine the question of ownership, inasmuch as the property is in gremio legis. In such a case the claimant may either proceed in the common pleas, or he may submit his claim to the orphans' court. If he elect to pursue the latter remedy, he voluntarily brings himself and his cause within the jurisdiction of the court; he is not thereby creating a jurisdiction where none existed before, but adopting one already established.

2. The case is very different where the disputed property has never been within the grasp of the court, but is in possession of one claiming adversely to the estate. In the latter case the orphans' court has jurisdiction of neither person nor thing.

3. Where property is included in an inventory of decedent's estate,

but is claimed by another person, and on an issue a verdict is returned for the claimant and certified to the orphans' court, a finding by the orphans' court judge that the claimant owned the property based upon sufficient evidence and supported as to the credibility of the witnesses, by the verdict, will not be set aside by the appellate court.

*Appeals—Writ of error—Final judgment—Feigned issue.*

4. Where a verdict on a feigned issue has been certified back to the orphans' court without any judgment having been entered thereon, no appeal in the nature of a writ of error can be taken to the common pleas. An appeal cannot be taken until a judgment has been entered.

Argued March 30, 1909. Appeals, Nos. 91 to 100, inclusive, from decree of O. C. Phila. Co., April T., 1906, No. 11, dismissing exceptions to adjudication, and appeal, No. 101, by the Fidelity Trust Company, Executor of Edward M. Paxson, deceased, C. P. No. 2, Phila. Co., June T., 1907, No. 2,471 in the matters in the Estate of Edward M. Paxson, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Exceptions to adjudication.
The opinion of the Supreme Court states the case.

*Error assigned* in the appeal from the orphans' court was in dismissing exceptions to the adjudication, and in the appeal from the common pleas various rulings on evidence.

*John G. Johnson*, with him *Henry D. Paxson* and *John Marshall Gest*, for appellants.—There can be no doubt, for all the books and cases agree, that an issue directed by the chancellor to the common-law court is simply for the purpose of informing his conscience. He is not bound by the verdict and if he is not satisfied with it, may order a new trial, or if he prefers, may decide at once in opposition to the verdict, as did, for example, Lord Brougham in Armstrong v. Armstrong, 3 Myl. & K. 45, and our Supreme Court in Baker v. Williamson, 4 Pa. 456. See also Brawdy v. Brawdy, 7 Pa. 157; McCarron's Est., 17 Phila. 428; Green v. Mills, 103 Pa. 22; Wible v. Wible, 1 Grant, 406.

The correct practice, followed here, is not to enter judgment on the verdict, because the judgment is not final: Finney v. Moore, 8 S. & R. 345; O'Connor v. Malone, 6 Cl. & Fin. 572; but the evidence was regularly certified to the orphans' court along with the verdict, the charge of the court and the exceptions taken at the trial: Hallowell's Appeal, 20 Pa. 215.

Under the similar Act of June 16, 1836, secs. 87, 88, P. L. 755, Stewart's Purdon, 1581, relating to issue on distribution of proceeds of sheriff's sale, it was held that a writ of error was necessary as well as an appeal: Reed's App., 71 Pa. 378; Providence Steam, etc., Co. v. Chase, 108 Pa. 319; Huggins' Est., 204 Pa. 167; Thomas's App., 124 Pa. 640; Thomas v. Thomas, 124 Pa. 646.

In the settled language of the cases, the evidence must be "clear, precise and indubitable," which this evidence was not: Ahlborn v. Wolff, 118 Pa. 242; Liggett v. Shira, 159 Pa. 350.

*Eugene Raymond* and *William W. Porter*, for appellee.

OPINION BY MR. JUSTICE STEWART, June 22, 1909:

In the case of Stroup's Appeal, Estate of James Cutler, deceased, 225 Pa. 167, decided at this present term, the effort was, through the medium of the orphans' court, to bring into an estate for the purposes of distribution property not included in the inventory or accounted for, but which the accountant claimed as her own. We there held that the court was without jurisdiction to determine the ownership of the property. Here the effort was to withdraw from the estate an item of property included in the inventory and fully accounted for. The distinction is to be noted. In the one case, except as the title was admitted to be in the estate or was so established at law, the court could not distribute it; in the other, the property being presumptively an asset of the estate, in the hands of the executor, accounted for and therefore in gremio legis, the court had full jurisdiction to adjudicate any question in regard to it which stood in the way of its distribution; it could even relinquish its control of the property if the legal right to it was with the claimant: Gaffney's Estate, 146 Pa. 49. The party

claiming property in the custody of the law is the actor; he has a choice of forum and remedy. He can elect to proceed at common law for money had and received, or he may submit his claim upon distribution proceedings in the orphans' court, as was done in Gaffney's Estate, supra. If he elect to pursue the latter remedy he voluntarily brings himself and his cause within the jurisdiction of the court; he is not thereby creating a jurisdiction where none existed before, but adopting one already established. The case is very different where the disputed property has never been within the grasp of the court, but is in possession of one claiming adversely to the estate. In the latter case the orphans' court has jurisdiction of neither person nor thing.

At the time Judge PAXSON died he was the holder of a certificate No. 1,860, for 100,000 shares of the capital stock of the Amparo Mining Company. His executor, the Fidelity Trust Company, succeeding to this certificate of stock, included it in the inventory of the assets of the estate and has accounted for it. In the adjudication of the account John R. Williams appeared and made claim to the stock, alleging that he had pledged it as his own property to Judge PAXSON as collateral security for a debt of the Amparo Mining Company which, since the death of Judge PAXSON, the Amparo Mining Company had fully paid and discharged. He claimed the right to have the stock returned. Here was a case where the adverse claimant voluntarily elected his tribunal and submitted himself and his cause to its jurisdiction. That jurisdiction was complete as to the only question involved, viz., whether the stock should be surrendered, and that could be determined by the court upon its unaided investigation, that is to say, without the intervention of a jury. Whether a determination adverse to the claimant's contention would be conclusive against him is a question aside from the present inquiry. The learned auditing judge, because the amount involved was very large and the evidence conflicting, directed an issue to the common pleas to try the question of fact upon which the contention turned. We quite agree that the case was pre-eminently one which called for an issue; but the fact remains that the ju-

risdiction of the court in no wise depended on the granting of
the issue. A verdict was rendered sustaining the claim made
by Williams. The record of the trial including the testimony
and the charge of the court, having been certified back to the
orphans' court, the auditing judge thereupon proceeded with
the adjudication. His final conclusion was as follows: "Being
aided in reaching a conclusion by the verdict returned by the
jury in the trial of said issue, and in view of all the facts ex-
hibited and arguments presented, the auditing judge con-
cludes that John R. Williams was entitled to said shares of
stock." A decree followed directing the executor of the will
of Judge PAXSON to transfer and assign the stock to Jennie R.
Graham, executrix of the will of John R. Williams, and that
the executor of Judge PAXSON should have a corresponding
credit in its account. From this decree we have an appeal, and
a writ of error to the common pleas as well. The latter brings
nothing before us for review. While there was a verdict in the
issue, no judgment was entered thereon. It is said in appel-
lants' brief that it is the correct practice not to enter judgment
on the verdict in such cases, for the reason that the judgment is
not final, and for this Finney v. Moore, 8 S. & R. 345, is relied
on. But that case furnishes no authority whatever for this
view. There was a judgment in that case on the verdict, and
it was reversed, not, however, because it was incorrect in prac-
tice to enter judgment, but because it was contrary to the
agreement of the parties to the submission. Our attention has
not been directed to a case where a writ of error has been con-
sidered which was not based on a judgment. The language
of the Act of April 10, 1848, P. L. 450, Stewart's Purdon, 1435,
P. L. 6, is, "In all cases where a feigned issue has been or may
be directed by the orphans' court, a writ of error shall lie in the
same manner as in cases where feigned issues are directed by
the court of common pleas." Turning to the Act of June 16,
1836, P. L. 755, sec. 87, regulating issues in the common pleas,
we find it there provided that, "the judgment upon such issues
shall be subject to a writ of error, in like manner as other
cases wherein writs of error now lie." There can be no doubt
as to the general rule. "Error does not lie before final judg-

ment, and this rule is founded on great reason, because there would be no end to suits if they might be removed to the Superior Court on suggestion of error in every stage of the proceedings:" Lewis v. Wallick, 3 S. & R. 410. There being no judgment the effect is that there is nothing to review, and the verdict stands unappealed from. Not only was there no judgment, but we fail to discover a single exception taken to any ruling upon the evidence. All the evidence offered by the defendant in the issue was received, and none offered by the plaintiff was objected to. The exceptions are to the charge of the court and the refusal to give binding instructions. These were certified over to the orphans' court with the record, and were for the consideration of the auditing judge in determining what weight he would give the finding of the jury. The exception to the refusal of the court to give binding instructions for the defendant could come to nothing, since binding instructions would have defeated the only purpose of the issue. What the auditing judge wanted was not the opinion of another judge, but a finding by the jury on the controverted facts. With respect to the charge the clear inference is that the auditing judge saw no substantial error in it, otherwise another issue would have been directed or the verdict disregarded. However this may have been, the auditing judge makes it very clear that while aided by the verdict the finding of the jury accorded with his own conclusions, "upon review of all the facts exhibited and arguments presented." Sitting alone he had heard substantially the same evidence that was afterward submitted to the jury. He granted the issue because the evidence was conflicting, and because the case depended largely if not wholly upon the credibility of the witnesses called on part of the claimant. He was as he says aided by the verdict, but it is plainly manifest that the only aid he could have received from this source was the sanction given by the jury to the credibility of the witnesses, and it is not complained that this was influenced by the charge of the trial judge.

With a single exception all the assignments of error have regard to the trial of the feigned issue. In what we have said

these have been disposed of. The first assignment complains of error in directing an issue; in other words, the contention here is that the evidence adduced on part of the claimant was insufficient to support a finding in his favor, and that the auditing judge should have so decided. The certificate was in the name of Judge PAXSON and therefore imported ownership in him. Certain agreements and other documents in writing were relied upon as supporting this inference. It is argued that the case was precisely as though Williams had filed a bill to reform the written title to the stock, and had produced the same evidence in support of his claim. Assuming this to be so, there was quite enough in the evidence produced to sustain a finding in favor of the claimant. Two witnesses testified to distinct and unqualified admissions by Judge PAXSON that he held the stock as collateral, and that it was to be returned to Williams upon the payment of the debt for which it was pledged. Respecting this testimony there could be no manner of doubt as to the stock and debt referred to; both were fully identified, and the circumstances under which the alleged admissions were made were fully narrated. The testimony certainly met the requirements as to clearness and precision; and it became a question simply as to whether the witnesses spoke the truth. If what they testified to was true in fact, there could be no escape from the conclusion that honesty and good faith required a surrender of the stock. All that is required in such cases is that the witnesses should be found to be credible; that the facts to which they testify are distinctly remembered; that the details are narrated exactly and in due order, and that their statements are true: Spencer v. Colt, 89 Pa. 314. The jury accredited the witnesses; the auditing judge was of the same mind as the jury, and the orphans' court upon a review of the exceptions filed approved the finding. We see nothing in the case that would justify us in disturbing the result reached.

The writ of error for the reasons above stated is quashed and the appeal is dismissed at the costs of the appellants.