Carr Estate.

Argued October 7, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Edward J. I. Gannon*, with him *Howard J. Hazlett* and *Hazlett, Gannon & Walter,* for appellant.

*William H. Eckert,* with him *Edward H. Schoyer* and *Smith, Buchanan, Ingersoll, Rodewald & Eckert,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 10, 1952:

The appeal raised the question whether negotiable securities found after death in decedent's safe deposit box in envelopes inscribed by decedent as the property of *claimant* were owned by claimant, or whether they were the property of *decedent* which he intended to transfer to claimant as a gift. The court ruled that the transaction constituted an ineffective gift and

awarded the securities to decedent's estate. This appeal followed.

Appellee complains that appellant has failed to comply with Rule 40 of this Court, in that she has failed to print all of the evidence introduced at the audit. An examination of the voluminous original record discloses that at the audit of the account four separate issues were litigated; the testimony is 482 pages in length, with large bundles of exhibits, etc.; all testimony relating to the present claim has been printed, together with the auditing judge's opinion. The *exhibits* were not photostated and attached to the printed *record* in appellant's paper book. There appears to be no controversy relating to such exhibits. Appellee has made no motion to quash and disclaims such desire. We will, therefore, review the case upon the record as presented.

At the audit of the account of the executor, Emma W. Sherwood, a woman over eighty years of age, a resident of the State of New York, claimed specified securities found by the fiduciary, after the death, in decedent's safe deposit box. James O. Carr, the decedent, was a lawyer, a member of the Allegheny County bar; he did not actively engage in the practice of his profession; when he died testate May 23, 1949, his estate as shown by the schedule of distribution amounted to $446,365.84; he was survived by a wife, but no issue.

The auditing judge found: "The securities claimed by Emma W. Sherwood are set forth in the Inventory and Appraisement in a separate schedule. The appraised value of the securities is $12,256.58. They consist of sixteen separate items of which thirteen are coupon bearer bonds and three are certificates for shares of stock. Two of the stock certificates are registered in the name of James O. Carr and are endorsed by him in blank. The other stock certificate is regis-

tered in the name of Obey and Nuttall and is endorsed in blank. After Mr. Carr's death these securities were found in his Oliver Building office in three separate envelopes which are in evidence as Exhibits S-1, S-2, and S-3. These envelopes are endorsed on the outside in Mr. Carr's handwriting with the respective legends 'Property of Emma W. Sherwood, Ballston Spa, N. Y. J.O.C.', 'Property of Emma W. Sherwood', and 'Property of Emma W. Sherwood, Ballston Spa, N. Y.'."

The record does not disclose when and how the securities in the marked envelopes were acquired, and whether by decedent or claimant.

The court below ruled: "The fact that the securities were in the possession of the decedent at the date of his death raises a presumption that they are his property . . . In the case at bar no evidence was adduced which overcomes the presumption of law that the securities claimed by Mrs. Sherwood were the property of James O. Carr at the date of his death."

We are unable to agree with this ruling. A *presumption of ownership* does not arise *solely* because property is in the *possession* of decedent at death. Many circumstances may exist under which property is in the possession of a decedent without the presumption or inference of decedent's ownership. The burden of proof is on anyone who claims property in the possession of another to establish facts essential to the validity of his claim of ownership: *Henes v. McGovern,* 317 Pa. 302, 176 A. 503; *Weaver v. Welsh,* 325 Pa. 571, 191 A. 3; *Commonwealth Trust Company of Pittsburgh v. Hugo,* 328 Pa. 116, 194 A. 904. It is true that in each of the above cited cases the property was in the hands of claimant and the claim was made by the estate. But the same principle applies where the situation is reversed. Where, however, the claim of ownership is based upon an alleged *gift* of property found in

*decedent's* possession, claimant's burden of proof is greatly increased. To establish a *gift* it is essential to prove an *intention* to make a donation and an *actual or constructive delivery,* sufficient to divest the giver of all dominion and invest the recipient therewith. The written or oral declaration of decedent that the property so in his possession is that of claimant while of evidential value, is standing *alone,* insufficient to establish a valid gift: *Reese v. Philadelphia Trust, Safe Deposit & Insurance Company,* 218 Pa. 150, 67 A. 124; *Finn v. Finn,* 322 Pa. 196, 185 A. 847; *Tomayko v. Carson,* 368 Pa. 379, 83 A. 2d 907. Cf. as to *constructive* delivery: *McGary Estate,* 355 Pa. 232, 49 A. 2d 350.

Curiously enough *Shober Estate,* 67 D. & C. 251, 257, is cited by both appellant and appellee in support of their respective positions. It has many features similar to those in the present case. Judge LADNER (later Mr. Justice LADNER of this Court) was the auditing judge. In decedent's safe deposit box was found a sum of money in a sealed envelope whereon decedent had written, but not signed, "This belongs to [claimant]." Claimant contended that the money was his and he had given same to decedent for safekeeping; he did not claim the money as a *gift* from decedent. Incompetency of claimant as a witness was waived. He attempted to prove the claim by his own oral testimony. The auditing judge rejected the claim because he disbelieved claimant's testimony. Claimant having failed to establish his claim, it was properly rejected.

*Henes v. McGovern,* 317 Pa. 302, 176 A. 503, (above cited), was a case of alleged *gift* of money. The cash was in the hands of the claimant. The administrator of the estate of the alleged deceased *donor* demanded the return of the fund. The issue was certified by the orphans' court to the court of common pleas. It was resolved by the jury in favor of the estate of decedent.

This Court, speaking through Justice MAXEY (later Chief Justice), held (p. 309) : ". . . the *initial* burden of proving that [decedent] owned . . . the [money] in dispute was upon the administrator of his estate . . ." and (p. 311) "Having shown that [decedent] owned the money in dispute a short time before his death, the presumption is that the ownership remained in him until the contrary was proved . . ." When such *prima facie* ownership was established in decedent, the burden shifted to claimant to establish a *gift.* The question of the shifting burdens of proof during the progress of a trial was discussed. Justice MAXEY said (p. 310) : "There is considerable confusion of thought arising from the fact that the phrase 'burden of proof' is used indiscriminately as meaning either *burden of proof* or *burden of producing evidence.* It was aptly said in Central Bridge Co. v. Butler, 2 Gray 130: 'The burden of proof and the weight of evidence are two very different things. The former remains on the party affirming a fact in support of his case, and does not change in any aspect of the cause; the latter shifts from side to side in the progress of a trial, according to the nature and strength of the proofs offered in support or denial of the main fact to be established.' See also Caldwell v. New Jersey Co., 47 N. Y. 282, 290.

"In the case of Abrath v. N. E. Ry. Co., 32 W. R. 50, 53, Lord Justice BOWEN said : 'In order to make my opinion clear, I should like to say shortly how I understand the term "burden of proof." In every lawsuit somebody must go on with it; the plaintiff is the first to begin, and if he does nothing he fails. If he makes a prima facie case and nothing is done by the other side to answer it, the defendant fails. The test, therefore, as to burden of proof is simply to consider which party would be successful if no evidence at all was given, or if no more evidence was given than is given

at this partcular point of the case; because it is obvious that during the controversy in the litigation there are points at which the onus of proof shifts, and at which the tribunal must say, if the case stopped there, that it must be decided in a particular way. Such being the test, it is not a burden which rests forever on the person on whom it is first cast, but as soon as he, in his turn, finds evidence which, prima facie, rebuts the evidence against which he is contending, the burden shifts until again there is evidence which satisfies the demand. Now, that being so, the question as to onus of proof is only a rule for deciding on whom the obligation rests of going further, if he wishes to win.' " We have since frequently cited this case with approval, *inter alia: Katz v. Lockman,* 356 Pa. 196, 51 A. 2d 619; *Arco Metalscraft Company v. Shaw,* 364 Pa. 39, 70 A. 2d 850.

In the present case *claimant* had the *initial* burden of proving that she was the owner, or presumptive owner, of the securities which she claims. Because a surviving party to the transaction, she is incompetent to testify: Act of May 23, 1887, P. L. 158, sec. 5 (e), 28 PS 322; *Swieczkowski v. Sypniewski,* 294 Pa. 323, 144 A. 141. The only testimony adduced by claimant was that of the Vice President, Trust Department, of decedent's corporate executor, who, called as *claimant's* witness, testified concerning the contents of decedent's safe deposit box found by him. Appellee produced no testimony. It is upon this evidence alone that the allowance or rejection of the claim depends.

To sustain her *initial* burden of proof claimant relies upon the following: decedent was an attorney-at-law; while not in active practice, he did prepare or assisted in preparing her federal income tax returns from 1944 until 1949; on January 25, 1949, decedent mailed claimant the income tax return for the year 1948

and instructed her to sign the original and forward it to the Collector of Internal Revenue; he also advised claimant that her return disclosed an overpayment of tax amounting to $193.25 and that she would receive a refund check from the Collector for that amount; he enclosed in his letter to claimant eleven itemized bond interest coupons, some of which were from bonds included in the list of securities in question; that attached to a copy of claimant's income tax return for 1947 in decedent's safe deposit box, was a memorandum, in the handwriting of decedent, listing 20 items of bonds, 6 of which being also included in the list of securities in question. As hereinbefore indicated, 16 securities were found in the endorsed envelopes; 3 of them were stock certificates and 13 coupon bearer bonds; two of the stock certificates are registered in the name of decedent and endorsed by him in blank; the remaining certificate is registered in the names of Obey & Nuttall (investment brokers) and endorsed by them in blank. All the securities were found in three different envelopes respectively endorsed *in decedent's handwriting* as "Property of Emma W. Sherwood" (the claimant). One envelope also had decedent's initials affixed.

This established a presumptive or *prima facie* ownership of the securities in claimant. It cast the burden upon the executor of decedent's estate to prove that decedent had owned the stocks and bonds shortly before his death and that decedent, with the securities still in his possession, was attempting by means of his written declaration to consummate a *gift*. This proof the executor did not produce.

The court below ruled that the relationship of attorney and client was not established. With this we do not agree. While decedent may not have been an

active practitioner, this did not prevent him from rendering professional services. To prepare income tax returns for five successive years and to advise claimant concerning her right to refund for overpayment of income tax is acting professionally. If decedent was not so acting, but was performing such duties as a friendly layman, the burden rested upon the executor of the estate to prove it. The statement in the opinion of the court below that ". . . [claimant] and [decedent] were old friends and that in the later years of [decedent's] life he made some provision for [claimant's] support by sending her the coupons from the bonds which were in the envelopes referred to above" is not supported by the evidence before us. The fact that claimant is over eighty years of age and rented rooms in her home, or that decedent had made a gift to claimant of other shares of stock, has no bearing upon the present question of ownership. Such findings of fact, unsupported by the evidence, are but inferences drawn from the facts. Where such findings are not correctly reasoned or inferred they will be set aside: *Dorrance's Estate*, 309 Pa. 151, 163 A. 303; *Casani's Estate*, 39 D. & C. 232, 243, affirmed in 342 Pa. 468, 21 A. 2d 59; *Jac Estate*, 355 Pa. 137, 143, 49 A. 2d 360; *Estate of Martina R. Nixon*, 104 Pa. Superior Ct. 506, 509, 159 A. 172; *Estate of Frank A. Boswell*, 109 Pa. Superior Ct. 365, 368, 167 A. 402. The fact that two of the stock certificates were in the name of decedent, and endorsed by him in blank, is not controlling that decedent intended the endorsement to operate as a gift. Certainly it cannot be contended that the shares in the names of the *brokers* and endorsed by them in blank were a gift from the brokers to claimant. It is equally consistent with the conjecture of appellee that claimant in fact may have purchased the same acting through her attorney, the decedent. In any event,

proof was required to overcome the *prima facie* proof adduced by claimant.

Three cases are cited by the learned auditing judge as authority for the principle that "securities . . . in the possession of the decedent at the date of his death raises a presumption that they are his property: Criswell's Estate, 334 Pa. 266; Keyser's Estate, 329 Pa. 514; Paxon's Estate, 225 Pa. 204. . . ." An examination of those cases discloses that they relate to the *jurisdiction* of the orphans' court in matters of dispute of title to personal property. They all hold that where at decedent's death property is shown to have been in his possession, or is presumptively his, the orphans' court has jurisdiction to investigate so far as to inform itself whether a substantial dispute exists. If such dispute does exist an issue must be awarded for trial by jury.

The appellant made out a *prima facie* case and because nothing was done by appellee to answer it, the case of the appellee falls. Since the claimant established her title to the securities, the executor is directed to surrender them to claimant: *Paxson's Estate,* 225 Pa. 204, 206, 73 A. 1114.

The decree of the court below is reversed, at appellee's cost, the securities in controversy to be delivered to appellant, with necessary transfers.