## Fey Estate

*Robert J. Gillespie*, for petitioner.

*Edmund J. McCullough* and *John J. Dempsey*, for respondent.

JONES, P. J., December 2, 1954.—In this proceeding we must determine the ownership of 15 shares of stock of the West Hazleton Building and Loan Association.

On August 1, 1938, certificate no. 25 (representing 10 shares) and on October 1, 1939, certificate no. 54 (representing five shares) were issued by the loan association in the name of Erwin and Lena Weiss, then husband and wife. The Weiss' marriage was dissolved by Erwin Weiss' death on March 29, 1943, and approximately 16 months later—September 28, 1944 —Lena Weiss married Henry G. Fey, claimant.

On November 26, 1945, Lena Weiss visited the office of the loan association. The original purpose of her visit was to surrender the 15 shares of stock and use the proceeds thereof in helping claimant defray the expenses of remodeling certain realty in Hazleton Pa.[1] However, Mrs. Fey was dissuaded from her purpose by Mr. Stauffenberg, the secretary of the loan association, and she then decided to place the stock in the joint names of herself and her husband. To that end, while in the loan association office, Mrs. Fey executed two separate forms reading as follows:

"Know all Men by These Presents, that I, Lena Weiss (surviving spouse of Erwin Weiss), now Lena Weiss Fey for value received, have transferred, assigned and set over, and by these presents do transfer, assign and set over to Lena Weiss Fey and Henry G. Fey, her husband all my right, title and interest in Ten (10) Full Paid Shares of Certificate No. 25 of West Hazleton Building and Loan Association.

"Witness my hand and seal this 26th day of November, A. D. 1945.

"LENA WEISS FEY (Seal)"[2]

That these forms were actually executed by Mrs. Fey and left at the loan association office is admitted. The association noted, in handwriting, on each of the stubs of the certificates in the association's certificate book the following:

"11/26/45 assigned to Lena Weiss Fey & Henry G. Fey, her husband."

---

1. This realty was originally owned by claimant alone, but it had been transferred shortly before this incident to Mrs. Fey and claimant as tenants by the entireties.

2. One form gave the certificate number as 25 and the number of shares as 10, while the other form gave the certificate number as 54 and the number of shares as five; otherwise, the forms were identical.

The stock certificates themselves were never presented to the association nor was a request ever made to the association to issue new certificates in place of the old certificates. From November 26, 1945, to the date of Mrs. Fey's death—March 11, 1953—all dividends on this stock were paid by checks issued in the names of Lena W. Fey and Henry G. Fey, although the stock certificates continued to bear the names of Erwin and Lena Weiss.[3]

Until January 25, 1949, apparently, the stock certificates remained in Mrs. Fey's safe deposit box. On January 25, 1949, Mr. and Mrs. Fey secured a safe deposit box at the Hazleton National Bank, Hazleton, Pa., to which box, under a written agreement between the parties, both parties had access. The stock certificates were placed in this box where they remained until removed by Mrs. Fey's counsel who, acting under a written power of attorney from Mrs. Fey, took these certificates into his possession.

Under these circumstances, had Mrs. Fey made a gift inter vivos to claimant of the stock?

Certain well-established principles of law are applicable to this litigation: First, to constitute a valid gift inter vivos there must be proof of an intention to make a gift, as well as a delivery, actual or constructive; second, the burden is upon claimant, to establish the existence of a gift by clear and convincing evidence;[4] third, where the gift sought to be

---

3. In Pennsylvania corporate stock can be held by husband and wife as tenants by the entireties: Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476 (1938); Blumner v. Metropolitan Life Insurance Company, 362 Pa. 7 (1949).

4. Rynier Estate, 347 Pa. 471, 474 (1943); Tomayko v. Carson, 368 Pa. 379 (1951); Kerwin Estate, 371 Pa. 147, 159 (1952); Carr Estate, 371 Pa. 520, 523-526 (1952); Titusville Trust Company, admr., v. Johnson, 375 Pa. 493, 498 (1953).

established is between a wife and husband the degree of proof required is less than required where the alleged transaction is between strangers.[5]

The record indicates that sometime subsequent to the marriage Mr. Fey transferred into the joint names of himself and his wife not only his real estate but also securities and other personalty. Aware of this action on her husband's part, it is understandable that Mrs. Fey wanted to make at least a gesture toward the same end. Her original plan of converting her loan association stock into cash for the purpose of defraying part of the cost of remodeling the common matrimonial home having been discouraged by the loan association official, she then determined to create a joint ownership of the stock in her husband and herself.

The fact that Mrs. Fey in transferring this stock did not comply strictly with the provisions of the Uniform Stock Transfer Act is no moment.[6] As a matter of fact, Mrs. Fey did all that the loan association required of a stockholder in order to effectuate a transfer of ownership of the stock to herself and husband; the manner of effecting the transfer was dictated by the loan association secretary acting after

5. In Watkins, Exec., v. MacPherson, 348 Pa. 467, 471, it was said:
"In Yeager's Est., 273 Pa. 359, 362, 117 A. 67, this Court stated: 'The quality and quantity of proof required to meet this obligation varies greatly, depending upon the circumstances of the particular case. Where the parties are strangers, the presumption against voluntary transfers is greater than in transactions between those holding more intimate relations. If the gift is from husband to wife (Crosetti's Est., 211 Pa. 490), or parent to child (Langdon v. Allen, 1 W. N. C. 395), the action of the donor is viewed as but natural, and less evidence is required to establish the intention.' "

6. 15 PS §301. The provisions of that act apply only to questions of stock transfers arising between the corporation and the stockholder and do not apply in transactions between individuals where the rights of the corporation are not involved: Re Connell's Estate, 282 Pa. 555 (1925).

consultation with the association counsel. Insofar as the association was concerned it recognized that the stock ownership was vested in both the husband and wife and it not only carried the names of the new owners on the certificate stubs but also paid all dividend checks in both names.

The fact that Mrs. Fey never endorsed the stock certificates themselves did not defeat her husband's claim if there was otherwise a completed gift: Titusville Trust Co. v. Johnson, supra, and cases therein cited.

The notation of transfer of ownership on the association stock certificate books may in itself constitute a delivery of the stock. Marshall v. Commissioner of Internal Revenue (C. A., 6th Circuit), 57 F. 2d. 633; certiorari denied by Supreme Court 287 U. S. 621, 77 L. Ed. 539, 53 S. Ct. 20.

The respondent estate does not challenge the existence of a present intention on the part of decedent to make a gift of the stock. There can be no doubt of the existence on the part of decedent, in delivering the assignments, of an intention to make a present gift, and that it was decedent's intent to make a gift not only of the income arising from the stock but of the stock itself.

The question remains, however, whether there was an actual or constructive delivery which divested the donor of all control over the shares of stock which are the subject of the gift and invested the claimant therewith.

There appears to be a split of legal authorities concerning the validity of a gift of corporate stock where a gift is attempted, without an actual manual delivery of the certificate of stock, by delivery of a separate written instrument assigning the stock.

New York and a number of other jurisdictions follow the rule that a valid gift of corporate stock may

be made, without delivery of the stock certificate, by delivery of a separate written assignment. A leading New York case is In Valentine's Estate, 204 N. Y. S. 284 (1924) in which the New York court held that a valid gift of corporate stock could be made by delivery of a separate written assignment. Other jurisdictions, of which New Jersey and Massachusetts are typical, hold that the delivery of a separate written instrument is ineffective to create a valid gift inter vivos of corporate stock in view of the provisions of the Uniform Stock Transfer Act: Parker v. Colonial Building-Loan Assn., 111 N. J. Eq. 49, 161 Atl. 353 (1932) and Johnson et al. v. Johnson et al., 300 Mass. 24, 13 N. E. 2d. 788 (1938).

In somewhat analogous situations Pennsylvania has adopted a line of reasoning similar to the New York rule. In Connell's Estate, 282 Pa. 555 (1925), our Supreme Court held that the Uniform Stock Transfer Act was not intended to affect rights between a donor and donee of shares of stock. In Murphy's Estate (no. 2), 53 D. & C. 315 (1945), a gift of personalty made without the delivery of the property but by separate written instrument was held valid. In Henderson et al. v. Hughes, 320 Pa. 124 (1936), a holder of a mortgage executed and acknowledged an assignment of the mortgage, which was then recorded; a delivery was presumed even though there was no delivery of the actual documents representative of the debt or the security therefor. In Citizen's National Bank of Irwin, v. Irwin Building & Loan Association, 316 Pa. 536 (1934), without the knowledge of the loan association one of its certificates was pledged as collateral security, said pledge being properly executed and delivered to the pledgee; the court held that the title of the pledgee was valid even though the transfer had not been registered on the association's books and even though a bylaw of the associa-

tion provided that stock was transferable only when noted upon the association's books. In Reap, Exec., v. Wyoming Valley Trust Co., 300 Pa. 156 (1930) (a declaratory judgment proceeding concerning the ownership of a bank account) it was held that where a manual delivery of property as a gift is not practicable, a transfer may be made by assignment or other writing, which will indicate the donor's present intention to pass the right of possession to the donee.

Millard Estate, 77 D. & C. 97 (1951), is somewhat similar to the instant situation. In that case the owner of certain shares of stock, intending to make a gift thereof, executed an assignment and power-of-attorney therefor, which he gave to one of the donees for delivery to the corporation secretary for the purpose of transferring the stock on the books of the corporation. The Court held that there was a valid gift, stating (page 103):

". . . it is apparent that the intention of this decedent was to make a valid gift inter vivos, and was accompanied by a constructive or symbolic delivery of the stock certificate by the execution and delivery of the assignments."

While is it true that the donor in Millard Estate, supra, was in Florida and the subject matter of the gift—the stock certificates—in Annville, Pa., and that the donor died shortly after his return to Pennsylvania, the ruling in Millard Estate is applicable to this case.

In Millard Estate, supra, pp. 100-01, the court said:

"Respondents contend that the execution by decedent of these assignments and delivery of the same to Ernest D. Williams constituted a valid gift *inter vivos*. They argue that there are two essential elements to such a gift of an intention to make the gift, then and there, and such actual or constructive delivery at the same time to the donee as divests the donor of all do-

main over all such matter and invests the donee therewith, citing Rees v. Philadelphia Trust Safe Deposit & Insurance Company; 218 Pa. 150.

"Respondents also contend that under the circumstances before us, a valid gift was made, citing 99 A. L. R. 1077, 1084, and also 12 Fletcher Cyc. Corp. secs. 5683-84, pages 959, 960, 963. These text books authorities hold that delivery must be actual so far as the subject of the gift is capable of delivery or otherwise it must be such delivery as the nature of the subject of the gift reasonably permits, and must clearly manifest an intention on the part of the donor to divest himself of title and possession. Constructive or symbolical delivery may pass the title which can be deduced from the acts or conduct of the parties or the delivery of something representing the subject of the gift or the right thereto. A complete gift of corporate stock may be made without actual manual delivery of the certificate of stock by a constructive delivery of the stock resulting from the acts of the donor, or by the delivery of an instrument of gift whereby he has divested himself of all right and title to the stock and complete ownership thereof has passed to the donee."

While Mrs. Fey undoubtedly could have endorsed the stock certificates and either delivered them directly to the donee or secured the issuance of new certificates by the loan association, it is evident that so far as she was concerned such actions were entirely unnecessary to effect her purpose. What Mrs. Fey did by way of vesting the claimant with an interest in this stock was done under authority and by direction of the loan association secretary and counsel. What the loan association required to be done to divest her interest and vest an interest in the claimant sufficed to induce in Mrs. Fey the belief that she had done all that was required to be done to complete a gift of this stock.

When Mrs. Fey on November 6, 1945, executed and delivered the assignments to the loan association she divested herself of control over the stock itself. Insofar as the association itself was concerned nothing further remained to be done under its requirements to perfect title to the stock in Mrs. Fey and claimant. From that time on the association recognized that claimant and Mrs. Fey were the owners of the stock; no further transfer of the stock would have been permitted without the joinder of claimant and Mrs. Fey. While it is true that the actual stock certificates remained from November 6, 1945, until January 25, 1949, in a safe deposit box to which decedent alone had access, yet by the execution and delivery of the assignments, Mrs. Fey had divested herself of control over this stock. Had Mrs. Fey changed her mind about the transfer and presented the stock certificates themselves for surrender to the loan association, it is clear that the loan association would have taken the position that no surrender could be effected without the request for the surrender therefor joined in by claimant as well as Mrs. Fey.

From January 25, 1949, until a short time prior to Mrs. Fey's death, the safe deposit box containing the certificates was subject to access both by the husband and wife. While it has been held that joint access to a safe deposit box alone does not prove a completed gift, yet it may, under the circumstances, be of great evidential value in determining the gift's validity: Wohleber's Estate, 320 Pa. 83, 86 (1935); Tomayko v. Carson, supra, p. 385.

In Roberts' Appeal, 85 Pa. 84, 86, 87 (1877) the court said:

"But here the gift is complete by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete

possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books. There was here no *locus poenitentiae*. He could not have used the certificates, nor could any one have used them except Miss Foster."

When Mrs. Fey on November 6, 1945, executed the assignments and delivered them to the loan association and the loan association on its books effected a transfer of the ownership in these shares of stock, claimant became clothed with a legal title to the shares of stock. The act of decedent stood in the place of delivery and performed precisely the office which an actual delivery would perform if it were a chattel and was as complete a delivery as the nature of the thing would admit of.

In our opinion, under all the circumstances of this case, Mrs. Fey possessed not only the intent to make a gift of the stock to claimant but by the written assignments and by effecting a transfer of the owner-

ship of this stock upon the books of the loan association she completed all that was necessary for her to do to vest ownership of the stock in herself and her husband.

Counsel for the estate argues that since decedent by the provisions of her will—executed shortly before her death, and long subsequent to the date of the purported gift—disposed of this stock, such action on decedent's part should be considered as proof that the stock was still owned by her. In our opinion, this contention is unsound since decedent had already divested herself of such control over this stock as to be able to dispose of it by will and the gift had been completed in an irrevocable manner prior to the date of the will. The provision of decedent's will in respect to this stock fails because at the time of the execution of the will decedent did not have the power of disposition over this stock.

In our opinion, decedent had made a gift inter vivos to claimant and upon her death claimant, as surviving tenant by the entirety, became the owner of the entire interest in this stock.

Under section 745(a) of the Orphans' Court Act of August 10, 1951, P. L. 1163, whenever a substantial dispute of fact arises concerning decedent's title to personal property, any party in interest is entitled to a trial of this fact by a jury. However, this right may be waived by any party in the manner provided in sec. 745(c) of the act. Both parties in interest have waived their right to a jury trial.

In line with the views expressed in this opinion, the rule granted by this court on June 18, 1954, to show cause why certificates nos. 25 and 54 representing 15 shares of the capital stock of the West Hazleton Savings and Loan Association should not be turned over to Henry G. Fey as his property is made absolute.