# Pierce Estate

*Wisler, Pearlstine & Talone* and *Speiser, Satinsky, Gilliland & Packel,* for executrix.

*Roland Fleer,* for claimants and objectors.

TAXIS, P. J., October 3, 1958.—The first and final account of Lucille C. Pierce, executrix, was examined and audited by the court on March 12, May 7, May 8 and May 14, 1958.

The account shows a balance for distribution of $21,520.20, composed as follows: Two $500 United States Treasury Bonds 2¼'s; two $1,000 United States Treasury Bonds 2¼'s; two $10,000 United States Treasury Bonds 2¼'s; deposit of $405.48 in a special account; $790 representing commissions due decedent; and an amount due the accountant of $2,-675.28.

Walter Bryant Pierce committed suicide on October 1, 1954, leaving his widow to survive him and a will dated April 23, 1946, in which he named his widow as executrix and sole residuary legatee. Objections to the inventory and to the account were filed by Nancy Vadner Chance and Charles Rush Miller,* guardian of the estate of Norman Vadner, a minor, complaining that the United States Treasury Bonds in the amount of $23,500 and the cash in the amount of $405.48 are the property of the objectors and not of decedent or his personal representative.

A pretrial conference was held in this matter on November 13, 1957, at which time many of the facts, hereinafter recited, were stipulated and agreed to by counsel for the parties. Some of these agreed facts were subsequently withdrawn at bar at the hearing on March 12, 1958. However, a full and complete copy of the pretrial conference and the subsequently retracted agreed-to facts has been made a part of the record in this matter and is appended to the notes of testimony.

In support of their allegation that the United States Treasury Bonds and the cash as set forth in the inventory belong to them and not to the estate, claimants called Lucille Pierce as on cross-examination. Lawrence Samuel Vadner and Eleanor Vadner, father and

---

* Before audit and distribution Charles Rush Miller, guardian, died, and Robert Humbert was appointed substituted guardian.

mother respectively of the two claimants, also appeared and testified.

Counsel for the executrix has objected to the testimony of Mr. Vadner on the grounds that this witness is incompetent under the terms of the Evidence Act of May 23, 1887, P. L. 158, sec. 5(e), 28 PS §322. The statute reads in parts pertinent as follows:

"Nor, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . party, be a competent witness to any matter occurring before the death of said party. . . ."

It is urged that Mr. Vadner also appeared in this proceeding as an alternative claimant to the fund, that therefore he has an interest which is adverse to that of the estate and accordingly is incompetent to testify on behalf of the claim of his son and daughter as to any events which occurred during the lifetime of decedent. What constitutes adverse interest sufficient to disqualify a witness from testifying has been reviewed in Gaston Estate, 361 Pa. 105, at 108, as follows:

"The law applicable . . . was stated by Justice Gibson in Wolf v. Carothers, 3 S. & R. 240, as follows: 'To exclude a witness, it is necessary that he should have a vested interest, not in the question, but in the event of the suit. It must be an interest, that the judgment in the cause would operate upon; for if by the event, he would neither acquire or lose a right, nor incur a responsibility, which the law recognizes, he is competent. Every other kind of interest goes to credibility.' [citations]

"This court also said in *Braine vs. Spalding*, 52 Pa. 247: 'The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent: Greenleaf's Ev. Vol. I, §390.' "

Counsel for the executrix contends that by presenting testimony on behalf of the claim of his children, the witness Vadner will thereby defeat his own claim as an alternative claimant. They argue, therefore, that his interest is one upon which judgment in the case will operate, i.e., that the witness will *lose* as the direct legal operation and effect of a judgment rendered in a suit. Although it cannot be denied that Mr. Vadner's claim is defeated by his own testimony on behalf of his children to the effect that the securities in question are the property of his children, it is equally obvious that Mr. Vadner is testifying *against* his own interests. Hence the conclusion is inescapable that Mr. Vadner has no direct pecuniary interest in the outcome of his children's claim, in fact the situation is exactly the opposite. Accordingly the objection of counsel for the executrix is overruled and the testimony of Mr. Vadner is received as being fully competent. The fact that the witness is the father of claimants goes merely to his credibility and not to his competency.

It should be observed that the stipulations of fact concerning the securities involved all refer to these securities as being "registered in the name of Nancy and Norman Vadner," and that the language of this particular designation was used at the insistence of counsel for the executrix. Accordingly, in an abundance of caution and in anticipation of the defense counsel for claimants joined Mr. Vadner as an alternative claimant to these securities. With this history

in mind it would be inequitable and unjust to allow an evidentiary ruling to evolve from such maneuvering and be controlled by the technical niceties of pleading, especially in this court, governed as it is by equitable principles.

From the pretrial conference and stipulation of facts and from the oral testimony the following facts were established in support of the two claims. Between 1948 and 1953. Mr. and Mrs. Vadner gave to their two children, Nancy Vadner Chance and Norman Vadner, securities totaling in value $87,560.66. The various securities, as more particularly set out in paragraph 5 of the pretrial stipulation, were traced and their origin developed by the testimony of Mr. Vadner. With regard to the details of acquisition, the record clearly establishes, and I find as a fact, that between 1948 and 1953 these securities were given to Nancy and Norman Vadner by their father and mother and that on or about August 1953, these two children were the owners of the securities more particularly described in paragraph 5 of the pretrial stipulation.

In April 1953, decedent, Walter Bryant Pierce, was employed as a customer's man by stockbrokers Francis I. DuPont & Company in their Philadelphia office and resided with his wife at 1807 Delancey Place, Philadelphia. At that time Pierce solicited business from Samuel Vadner, and thereafter a brokerage account with the DuPont Company was opened in the name of Nancy Vadner. In August 1953, there was pending in the Federal court an action against Samuel Vadner and his wife in which the United States Government was seeking to enforce payment by Mr. and Mrs. Vadner of large amounts of alleged deficiencies in income taxes and penalties. In the course of that proceeding Mr. Samuel Vadner was unofficially warned by a United States Government

tax official that the government was considering entering transferee jeopardy assessments against Nancy and Norman Vadner and that therefore the securities registered in their children's names might possibly be impounded.

In August 1953, Nancy Vadner was staying at Buck Hill Falls, where she was employed as a counsellor at The Inn. Norman was living at home in Bala-Cynwyd with his parents. Mr. and Mrs. Vadner and Norman had reservations to spend a vacation at The Inn at Buck Hill Falls from Saturday, August 22, 1953, until after Labor Day, September 7, 1953.

Prior to the Vadners leaving for Buck Hill Falls in August 1953, Mr. and Mrs. Vadner discussed with their children the advisability of selling the children's securities in order, first, to remove the securities from the risk of being tied up by possible transferee jeopardy assessments by the United States Government, and, second, to realize gains on the sales. During this same period Mr. Vadner also discussed the contemplated transactions with decedent who said he was prepared to cooperate by personally making a trip to New York to deliver the securities on short notice. On Friday, August 21, 1953, in the morning, the securities registered in Nancy's name were sold by telephone to New York from the Philadelphia office of Francis I. DuPont Company, and the securities registered in Norman's name were likewise sold from the Philadelphia office of White, Weld & Company. Mr. Vadner delivered to Pierce the children's securities which Pierce was to take to New York to deliver in fulfillment of the sale. The securities and net proceeds of the sales of each were as follows: Securities registered in the name of Nancy Vadner, $66,287.43; securities registered in the name of Norman Vadner, $21,279.33; securities registered in the name of Betty Vadner, another daughter of

the Vadners, $5,000. The latter (Betty's) are not involved in this proceeding.

On Friday afternoon, August 21, 1953, Pierce returned from New York with three certified checks, one of Francis I. DuPont and Company payable to Nancy's order for $66,287.43, another for Norman in the amount of $21,279.33 and a check in the approximate amount of $5,000 for Betty Vadner.

That evening, Friday, August 21, 1953, Mr. and Mrs. Vadner drove from their home to Pierce's home in Philadelphia. They remained there for approximately two hours and discussed the best method of dealing with these certified checks.

Mr. Vadner testified that he thought the best course of action was for the children to cash their checks at the National Bank of Narberth where each had an account. At that time Pierce advanced another plan saying that the checks being in such large amounts would not be cashed by the bank but rather would be deposited for collection, that the government tax officials were no doubt watching the bank accounts of all the Vadners and would seize them in the event that they were deposited for collection. Decedent then advanced the plan that the children endorse the checks to him and then place them in a deposit-by-mail envelop supplied by Pierce with the understanding that these checks would be sent to and deposited in Pierce's account in The First National Bank of Jersey City, N. J. Pierce then outlined a plan whereby once this deposit was made to his account, cashier's checks would then be obtained from The First National Bank of Jersey City. Pierce counselled the Vadners that cashier's checks would be immune from transferee jeopardy assessments of the United States Government. On August 24, 1953, the checks for the proceeds of the sale of these securities of claimants were endorsed by the two children as aforesaid, were received by The First National Bank

58

of Jersey City and were credited to decedent's account in the amount of $87,566.66.

On August 25, 1953, Pierce called at The First National Bank of Jersey City; but instead of applying the proceeds of the sales of Nancy's and Norman's securities to have cashier's checks issued by that bank, Pierce, without authority, knowledge or consent from claimants, used these proceeds to purchase an $87,000 letter of credit in his own name which he converted to his own use. On the following day, August 26, 1953, Pierce left by American Air Lines on a one-way ticket to Mexico City, Mexico, all without the knowledge or consent of claimants. The letter of credit was later cashed by Pierce or his attorney in Mexico City, Mexico.

Subsequently, Pierce was eventually located, arrested, extradited and brought back to Jersey City for trial under indictment for transporting the letter of credit with stolen funds. While released on bail a few weeks before his trial, Pierce committed suicide on October 1, 1954.

Of the $87,566.66, the sum of $76,026 was eventually recovered from Pierce in his lifetime and from his attorneys. The balance of $11,504.66 has not been recovered and all but $405.48 of this $11,504 was spent by decedent on his flight to Mexico and on his personal expenses, and by his wife, Lucille C. Pierce, in payment of their personal expenses.

Subsequently the father, Samuel Vadner, settled his income tax dispute with the Treasury Department by the payment of the sum of $56,526, and with the consent and approval of the children Mr. Vadner borrowed that amount from his children from the balance of $76,026 which had been paid into the district court. The payment of this amount of $56,526 by Mr. Vadner was approved by the district court, and it was then directed that the balance of $23,500

be deposited in the account of a stock brokerage firm, Bioren and Company, for the account of Nancy Vadner Chance and her brother, Norman Vadner.

On November 23, 1956, the district court entered an order in which Bioren and Company was directed to turn over to Lucille C. Pierce, executrix of the estate of Walter Bryant Pierce, deceased, the United States Government Bonds of the face value of $11,750 from Nancy Vadner Special Principal Account, and a like sum from the Eleanor Vadner, guardian for Norman Vadner, Special Principal Account.

The Federal court has disavowed and disclaimed jurisdiction of the controversy between claimants and the executrix of the estate of Walter Bryant Pierce concerning the ownership of the $23,500 of United States Treasury Bonds, but directed that these United States Treasury Bonds be paid to the executrix of the estate of Walter Bryant Pierce as an expedient and appropriate method of raising the question of ownership in the proper forum, namely, the Orphans' Court of Montgomery County. No inference of ownership by the estate can be drawn from the fact that the Federal court has directed the deposit of these funds to the account of this executrix. On the date of Pierce's death these funds were on deposit in Bioren and Company for Nancy and Norman Vadner. At that moment, therefore, these assets were not in the possession of decedent (cf. Carr Estate, 371 Pa. 520), but on the contrary were held for claimants by order of court.

There can be no doubt that claimants have successfully traced the sale of their securities into these $23,500 United States Treasury Bonds and the $405.48 from the account of Pierce in The First National Bank of Jersey City. Furthermore, there is no doubt that these assets belong to Nancy Vadner Chance and Norman Vadner in equal amounts and

that these assets are improperly listed in the inventory and in the account of the executrix of this estate. The court therefore directs that these assets be stricken from the account of the executrix and directs the executrix to herewith award and pay over these assets to Nancy Vadner Chance and to Robert Humbert, guardian for Norman Vadner.

The single defense raised by the executrix is that the father of claimants, Mr. Lawrence Samuel Vadner, was in trouble with the taxing authorities and that he improperly transferred these securities to his children in an effort to put them beyond the reach of the taxing authorities. There is, however, not a scintilla of evidence to support such an inference. These securities were legitimately the property of these children, most of them having been given to the children at a time when no tax troubles were hovering over the father's head and at a time when the father was making substantial profits in a very lucrative business. It is not unnatural for well-to-do parents to make periodic and substantial gifts to their children.

Moreover, the government was unable to prove and in fact disclaimed that these securities of the children were surreptitiously transferred by the father to evade taxes. The father in settling with the taxing authorities borrowed from his children the sum of $56,526 paid out of these funds and evidenced by notes which the father has given to his children in these amounts on a noninterest bearing basis. I find that there was no impropriety in the transfer of these securities to the children, that the securities always belonged to the children, that the children have properly and painstakingly traced these assets into the executrix' hands and that these assets should be paid back to them. These funds are awarded accordingly.

The estate offered no evidence in opposition to these claims other than depositions taken in connection with the Federal district court proceedings. These depositions were of little aid to the court on the question of ownership and, in fact, many of the admissions of Pierce contained in the depositions confirm and corroborate the claim of ownership of these two claimants.

In light of this finding the estate then becomes insolvent and no transfer inheritance tax will be due.

To the extent therefore that the executrix is unable to make payment to Nancy Vadner Chance and Norman Vadner, she is surcharged accordingly. In all other respects the account is confirmed, and it is ordered and decreed that Lucille C. Pierce, executrix, as aforesaid, forthwith pay the distributions herein awarded.

And now, October 3, 1958, this adjudication is confirmed nisi.

## Opinion sur Exceptions

TAXIS, P. J., May 6, 1959. — In an adjudication dated October 3, 1958, the auditing judge sustained objections to the account of the executrix of the above estate which objections complain that the inventory and account erroneously included as assets of the estate $23,500 in United States Treasury Bonds and $405.48 in cash, which allegedly belonged to the objectors, Nancy and Norman Vadner. The objectors successfully established their ownership of these assets and traced them into the hands of this accountant. The accountant has now filed 17 exceptions to this adjudication. Exceptions 1, 3, 5, 6, 7, 8, 11, 12, 15 and 16 raise once again the questions which were carefully considered in the adjudication. The arguments raised in the brief and at oral argument contain no matters which have not already been carefully considered and discussed. No good purpose

would be served by reiterating what has there been set forth in detail. Accordingly, these exceptions are hereby dismissed.

Exceptions 2, 4, 9, 13, 14 and 17 assert in effect that the auditing judge erred in not permitting the costs and expenses, primarily counsel fees, of the executrix to be paid from funds which the auditing judge determined to be the property of Nancy and Norman Vadner.

Exceptants base their claim against the property of Nancy and Norman Vadner on the theory that the administration expenses of this estate are properly chargeable to this property. They note that the fund in question was awarded by the Federal district court to the executrix and conclude that the executrix thereupon became duty bound to administer this fund as an asset of the estate.

However, as noted in the adjudication, the Federal district court has disavowed and disclaimed jurisdiction of the controversy between the Vadners and the executrix of the estate of Walter Bryant Pierce concerning the ownership of these funds. The Federal district court directed that these bonds be paid over to the executrix of this decedent as an expedient method of raising the question of ownership of these funds. The Federal district court did not conclude that these funds belonged to this decedent and that court's order cannot be construed as a mandate that the funds were to be administered as part of the assets of this decedent's estate. Not until the question of ownership was decided in favor of this estate would the funds become a part of decedent's assets subject to the claims of his creditors and the expenses of administration.

In this regard it is interesting to note that section 405 of the Fiduciaries Act of April 18, 1949, P. L. 512, as added by the Act of February 23, 1956, P. L. (1955)

1084, 20 PS §320.405, expressly provides for filing objections to an inventory as opposed to the account where ownership of property in the hands of a personal representative is in dispute. As a matter of procedural convenience the hearing of these objections was postponed until the audit. However, had only the inventory been before the court in the present proceedings, no disbursements for expenses of administration would have been in issue, and properly so, for the sole question to be considered would have been the ownership of the property. Similarly, although hearing on this point was held at the audit of the account, the fund in question is not automatically subjected to the expenses of administering the estate.

In effect the exceptions represent an effort on the part of the adversaries of the Vadners to recover their legal expenses from the fund which has been adjudicated to be the property of the Vadners. Counsel has relied on McKelvy's and Sterrett's Appeal, 108 Pa. 615, and Lancaster Trust Company's Case, 323 Pa. 107, as authority for subjecting the property of Norman and Nancy Vadner to the costs, expenses and counsel fees incurred by the executrix in the administration of this estate. These cases permitted the payment of counsel fees either from funds which had been produced by counsel's efforts or funds which were in the hands of counsel. However, neither of these elements exists in the present case. Exceptants argue that the fact that the money belonged to a third person is not necessarily material, since the lawyer in good faith had performed the services in the belief that his client was entitled to possession of the money. However, the ownership of the funds is highly material to this issue.

Finally it must be observed that even were it established that these funds were subject to the ex-

penses of administration of the estate, no evidence has been adduced in establishing the reasonableness of these expenses. Even the precise amount of the claim for counsel fees has not been established. The counsel fees, which are the principal item in issue, appeared in the account as a disbursement of $1,850. However, the petition for adjudication indicates a claim in the amount of $15,000 for counsel fees. On this state of the record there could not possibly be any basis for determining the amount to be allowed.

Accordingly, exceptions 2, 4, 9, 13, 14 and 17 are hereby dismissed.

A minor correction and supplement to page 5 of the adjudication has been requested. The middle of page 5 reads as follows:

"Between 1948 and 1953, Mr. and Mrs. Vadner gave to their two children, Nancy Vadner Chance and Norman Vadner, securities totaling in value $87,560.66."

This paragraph is hereby changed to read as follows:

"Over a period of years prior to 1953, Mr. and Mrs. Vadner gave to their two children, Nancy Vadner Chance and Norman Vadner, securities totaling in value $87,560.66."

In addition it is pointed out that the adjudication did not specifically award to Nancy Vadner and the guardian of Norman Vadner the interest due on the $23,500 of United States Treasury Bonds at the rate of 2¼ percent beginning with interest due on December 1956. The executrix, therefore, is hereby surcharged with the interest due on these bonds from that date.

And now, May 6, 1959, the adjudication of October 3, 1958, is hereby confirmed absolutely.